No. 06-598 T
(Judge Bush)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FOUR RIVERS INVESTMENTS, INC.,

Plaintiff

v.

THE UNITED STATES,

Defendant

**MOTION OF THE UNITED STATES TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
MARY M. ABATE
JOSEPH B. SYVERSON
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6508
(202) 514-9440 (facsimile)

# TABLE OF CONTENTS


**Page**

Motion of the United States to Dismiss Plaintiff's First Amended Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Background:

1. The Levies. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

2. The Federal Tax Lien.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3. Discharge of the Pine Tree Way Property from the Federal Tax Lien. . . . . 5

4. The First Amended Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument:

I. Plaintiff's Wrongful Levy Claims must Be Dismissed Because They Are Untimely. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A. Under *Gordon*, suits challenging wrongful levy claims in the Court of Federal Claims are subject to the limitations period prescribed by Section 6532(c). . . . . . . . . . . . . . . . . . . . . . . . . 9

B. The Supreme Court's recent decision in *EC Term of Years Trust v. United States* establishes that the nine-month statute of limitations under Section 6532(c) applies to all wrongful levy actions, but it calls into question *Gordon*'s holding that there is implied-in-fact contract jurisdiction over wrongful levy actions under the Tucker Act. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

C. In any event, this Court lacks jurisdiction to consider plaintiff's claims for wrongful levy because its complaint was not brought within the time required by Section 6532(c). . . . . . . . . . . . . . . . . . . . . . . 14

**Page**

**(Continuation):**

II. This Court Lacks Jurisdiction over Plaintiff's Claim for Return of a Payment Made to Discharge a Federal Tax Lien.. . . . . . . . . . . . . . . . . . . . 17

A. There Is No Judicial Remedy Available for Recovery of A Payment Made Pursuant to Section 6325(b)(2)(A) to Obtain A Certificate of Discharge of Property from a Federal Tax Lien.. . . . . . 18

B. Even If Plaintiff Had Applied for a Certificate of Discharge Under Another Provision of Section 6325(b), this Court Would Lack Subject Matter Jurisdiction over Plaintiff's Claim for Return of the Payment Made to Obtain The Certificate of Discharge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III. Section 7433A Does Not Provide this Court an Alternate Basis for Jurisdiction over Plaintiff's Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## TABLE OF AUTHORITIES

**Cases:**

*Amwest Sur. Ins. Co. v. United States*, 28 F.3d 690 (7th Cir. 1994). . . . . . . . . . . . 15

*Becton Dickinson & Co. v. Wolckenhauser*, 215 F.3d 340 (3d Cir. 2000). . . . 12, 16

*Bronson v. United States*, 46 F.3d 1573 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*City of Richmond v. United States*, 348 F. Supp. 2d 807 (E.D. Ky. 2004). . . . . . . 23

*Cryster v. United States*, 2006 WL 3203585, 6 (E.D. Wash. Nov. 2, 2006). . 22, 23

*Dahn v. United States*, 127 F.3d 1249 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . 12

*Dennis v. United States*, 976 F.2d 748, 1992 WL 204353 (Fed Cl. 1992). . . . . . . 12

**Page**

**Cases (Continuation):**


*EC Term of Years Trust v. United States*, ___ S. Ct. ___, 2007 WL 1237845 (U.S. April 30, 2007) , *aff'g,* 434 F.3d 807 (5th Cir. 2006). . . . . . . 11-14, 23

*Flora v. United States*, 362 U.S. 145 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Gordon v. United States*, 649 F.2d 837 (Ct. Cl. 1981). . . . . . . . . . . . . . . . . . . . 9-13

*Kirkendall v. United States*, 31 F. Supp. 766 (Ct. Cl. 1940). . . . . . . . . . . . . . . . . . 17

*In re Larsen*, 232 B.R. 482 (Bankr. D. Wyo. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ledford v. United States*, 297 F.3d 1378 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . 26

*Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003). . . . . . . . . . . . . . . . . . . 17

*Miller v. Tony and Susan Alamo Found*, 134 F.3d 910 (8th Cir. 1998). . . . . . . . . . 12

*Perri v. United States*, 340 F.3d 1337 (Fed. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . 26

*Shore v. United States*, 9 F.3d 1524 (Fed. Cir. 1993).. . . . . . . . . . . . . . . . . . . . . . . 23

*Standifird v. United States*, 32 Fed. Cl. 731 (1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*State Bank of Fraser v. United States*, 861 F.2d 954 (6th Cir. 1988). . . . . . . . . . . 14

*Trust Co. v. United States*, 735 F.2d 447 (11th Cir. 1984). . . . . . . . . . . . . . . . . . . 12

*United Sand and Gravel Contractors v. United States*, 624 F.2d 733 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Williams v. United States*, 947 F.2d 37 (2d Cir. 1991). . . . . . . . . . . . . . . . 12, 21-23

*Wilson v. United States*, 2004 WL 790220, 2 (E.D. Tenn . Feb. 24, 2004). . . . . . 22

*WWSM Investors v. United States*, 64 F.3d 456 (1995). . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Page

**Statutes:**

11 U.S.C. § 362 . . . . . . . . . . 17

Internal Revenue Code of 1986 (26 U.S.C.):

§ 6325. . . . . . . . . . *Passim*

§ 6343. . . . . . . . . . 15, 16

§ 6532. . . . . . . . . . *Passim*

§ 6653. . . . . . . . . . 2

§ 6672. . . . . . . . . . 2

§ 7422. . . . . . . . . . 23

§ 7426. . . . . . . . . . *Passim*

§ 7432. . . . . . . . . . 25

§ 7433. . . . . . . . . . 25-26

§ 7433A. . . . . . . . . . 1, 25-26

American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 (2004). . . . . . . . . . 26

Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, 108 Stat. 4106 (1994). . . . . . . . . . 17

Federal Tax Lien Act of 1966, Pub. L. No. 89-719, 80 Stat. 1126 (1966). . . . . . . 10

Internal Revenue Service Restructuring and Reform Act of 1986, Pub. L. No. 105-206, 112 Stat. 685. . . . . . . . . . 20

Page

**Statutes (Continuation):**

Judiciary and Judicial Procedures (28 U.S. C.):

§ 1346. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 19

§ 1491. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 2501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Miscellaneous:**

Rev. Rul. 2005-50, 2005-30, 2005-2 C.B. 124 . . . . . . . . . . . . . . . . . . . . . . . . . 19, 23

Rules of the Court of Federal Claims:

Rule 9.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Rule 12.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

S. Rep. No. 174, 105th Cong., 2d Sess. (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Treasury Regulation (26 C.F.R.):

§ 301.6331-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 301.6343-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§ 301.6343-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

§ 301.6532-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

60 Fed. Reg. 37 (Jan. 3, 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-598 T
(Judge Bush)

---

FOUR RIVERS INVESTMENTS, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant

---

**MOTION OF THE UNITED STATES TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

The United States moves to dismiss plaintiff's first amended complaint pursuant to RCFC 12(b)(1) because this Court lacks subject matter jurisdiction over plaintiff's claims. Plaintiff's complaint should be dismissed because (1) this Court lacks subject matter jurisdiction over plaintiff's wrongful levy claims because plaintiff filed its complaint in this Court after the statutory period of limitation in 26 U.S.C. § 6532(c) had expired; (2) this Court lacks jurisdiction over plaintiff's claim for a return of a payment made to discharge a federal tax lien on real property; and (3) 26 U.S.C. § 7433A does not, contrary to plaintiff's contention, provide an alternate basis for jurisdiction in this Court over plaintiff's claims. In support of its motion, the United States relies on the following memorandum, the exhibits attached to the Declaration of

Joseph B. Syverson filed simultaneously herewith, and the documents attached to the first amended complaint.

## INTRODUCTION

This case involves challenges to levies on two of plaintiff's financial accounts, and a federal tax lien on plaintiff's real property ("the Pine Tree Way property"), imposed by the Internal Revenue Service in partial satisfaction of an unpaid penalty in the amount of $601,251.24 assessed against Thomas E. Seidel. As will be explained below, suits challenging IRS levies and liens are subject to, *inter alia*, different shortened statutes of limitations. For the reasons discussed in the Argument below, plaintiff's challenges to the levies and the lien at issue may not be maintained in this Court.

## BACKGROUND

On October 23, 1996, Thomas E. Seidel was assessed $601,251.24 as a trust fund recovery penalty under 26 U.S.C. § 6672 for the tax period ending September 30, 1996.[1] (Ex. 1 at 2.) This penalty was assessed on account of his failure to collect and pay over employment taxes in his capacity as the president of T.E. Seidel Electric, Inc. (*Ibid.*; First Am. Compl. ¶ 5.)

---

[1]Under § 6672, if a person responsible for collecting and paying over taxes to the United States willfully fails to do so, the person is subject to a penalty equal to the amount of taxes the person failed to collect and pay over:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II of subchapter A of chapter 68 for any offense to which this section is applicable.

**1. The Levies**

On April 3, 2003, the Internal Revenue Service ("IRS") served a Notice of Levy (Form 668-A(c)) on Wells Fargo Bank, located at 1037 South Main Street, Salinas, CA 93901. (Ex. 2 at 1.) This notice identified the taxpayer to whom the levy related as "Four Rivers Investments, Inc., as the nominee, alter ego and/or transferee of Thomas E. Seidel." (*Ibid.*) The notice indicated that it was directed to account number 0117-326983 and any other accounts found. (*Ibid.*) The notice contains a signature acknowledging receipt of the notice dated April 3, 2003. (*Ibid.*) In response to the notice of levy, on April 25, 2003, Wells Fargo sent to the IRS a cashier's check drawn on Wells Fargo Bank, payable to the order of the IRS, in the amount of $4,011.87. (Ex. 3 at 1.) On May 5, 2003, this amount was credited against Thomas Seidel's outstanding assessed civil penalty balance for the tax period ending September 30, 1996. (Ex. 1 at 5.)

On April 3, 2003, the IRS served a second Notice of Levy on A.G. Edwards & Sons, Inc., located at 24600 Silver Cloud Court, Suite 200, Monterey, CA 93940. (Ex. 4 at 1.) This notice identified the taxpayer to whom the levy related as "Four Rivers Investments, Inc., as the nominee, alter ego and/or transferee of Thomas E. Seidel." (*Ibid.*) The notice indicated that it was directed to account number 596-166180 and any other accounts found. (*Ibid.*) The notice contains a signature acknowledging receipt of the notice dated April 3, 2003. (*Ibid.*) In response to the notice of levy, A.G. Edwards mailed the IRS a draft, dated April 24, 2003, drawn on A.G. Edwards & Sons, Inc., payable to the order of the IRS, in the amount of $41,007.32. (Ex. 5 at 1-2.) In the cover letter sent with the draft, A.G. Edwards informed the IRS that the amount of the draft represented the entire balance of plaintiff's account identified in the notice of levy, and that

plaintiff had no other accounts with A.G. Edwards. (*Id.* at 1.) On April 28, 2003, the amount of the draft was credited against Thomas Seidel's outstanding assessed balance for the tax period ending September 30, 1996. (Ex. 1 at 5.)

**2. The Federal Tax Lien**

On April 2, 2003, the IRS filed a Notice of Federal Tax Lien against plaintiff with the County Recorder for Monterey County, California. (Ex. 6 at 1-2.) This notice was recorded on April 3, 2003. (*Id.* at 1.) The Notice identified the party the notice related to as "Four Rivers Investments, Inc., A corporation, as the Nominee, alter ego and/or transferee of Thomas E. Seidel." (*Id.* at 2.) The Notice identified the assessment it arose out of as the assessment made against Thomas Seidel for the tax period ending September 30, 1996. (*Ibid.*) The Notice stated that it "attaches to property, or rights to property of, or held in the name of, Four Rivers Investments, Inc., a Corporation, as Nominee, alter ego and/or transferee of Thomas E. Seidel." (*Ibid.*) It further stated that it "includes, but is not limited to the property described on the attached legal description," which is identified in the notice as real property located at 617, 619, 621, and 623 Sherwood Drive, Salinas, CA. (*Ibid.*)

On or about September 28, 2004, Evelyn L. Olds, who is Thomas Seidel's mother (Ex. 12 at 2, 3), transferred real property located at 7595 Pine Tree Way, Salinas, CA ("the Pine Tree Way property"), by grant deed to plaintiff in exchange for a note in the amount of $269,000.00. (Ex. 7 at 1-4; Ex. 8 at 1.) This deed was subsequently recorded with the Monterey County, CA, recorder's office. (Ex. 7 at 1.) Also on September 28, 2004, Vicki Seidel on behalf of plaintiff executed a deed of trust with respect to the Pine Tree Way property, identifying Stewart Title of California, Inc. ("Stewart Title") as the trustee, and granting, transferring, and assigning to

Stewart Title as trustee the Pine Tree Way property. (Ex. 8 at 1.)

On September 10, 2004, Vicki Seidel on behalf of plaintiff entered into a contract to sell the Pine Tree Way property to Anne Cathey. (Ex. 9 at 1, 8.) The sale price under the contract was $499,000.00. (*Id.* at 1.) The contract provided that escrow would close on October 11, 2004, and identified Stewart Title as the escrow holder. (*Ibid.*)

On October 20, 2004, Stewart Title issued a second amended preliminary report for the Pine Tree Way property. (Ex. 10 at 1.) This preliminary report was prepared in response to an application for title insurance for the Pine Tree Way property by the buyer, Anne Cathey. (*Ibid.*) The preliminary report included a list of "exceptions to coverage in addition to the printed exclusions in a Policy of Title Insurance." (*Id.* at 1, 6.) This list of exceptions included the "Notice of Federal Tax Lien against Four Rivers Investments, Inc. . . . recorded April 3, 2003 as Recorder's Series No. 2003038231 of Official Records." (*Id.* at 7.)[2] The exceptions also included the "Deed of Trust to secure an indebtedness in the amount of $269,000.00, dated September 28, 2004, to the Trustee, Four Rivers Investments, Inc. [plaintiff]." (*Ibid.*)

**3. Discharge of the Pine Tree Way Property from the Federal Tax Lien**

On October 29, 2004, Alan Pobre, an IRS Advisor, emailed Vicki Seidel electronic copies of Publication 783 (Instructions on How to Apply for Certificate of Discharge of Property From Federal Tax Lien) and of Form 8821 (Tax Information Authorization). (Ex. 11 at 2.) In the email, Mr. Pobre explained to Vicki Seidel that she should designate the escrow officer as the appointee of plaintiff in the Tax Information Authorization because it may be necessary to share

[2]This recorder's series number matches the number associated with the Notice of Federal Tax Lien filed against plaintiff as nominee, alter ego, and/or transferee of Thomas Seidel. (Ex. 6 at 1.)

tax information with the escrow officer to process the application for a Certificate of Discharge. (*Ibid.*) On November 1, 2004, Mr. Pobre faxed a printout of the October 29, 2004 email and copies of Publication 783 and Form 8821 to Vicki Seidel. (*Id.* at 1-7.) The Publication 783 instructions included detailed information regarding the application of each of the separate provisions of 26 U.S.C. § 6532. (*Id.* at 3-5.)

Later on November 1, 2004, Vicki Seidel, on behalf of plaintiff, faxed an application for a Certificate of Discharge of Property From Federal Tax Lien and a completed Form 8821 to Mr. Pobre. (Ex. 12 at 1, 3-4.) The application identified the subject property as the Pine Tree Way property, and identified the Notice of Federal Tax Lien to which the application related as the notice filed against Four Rivers (plaintiff) with the Monterey County Recorder that was recorded on April 3, 2003. (*Id.* at 3.) The application was captioned "Request for Discharge of Property from Federal Tax Lien Under section 6325b." (*Ibid.*) The completed Form 8821, completed by plaintiff and executed by Vicki Seidel on behalf of plaintiff, identified the appointee as Jyme Smith of Stewart Title. (*Id.* at 4.)

On November 3, 2004, Vicki Seidel sent Mr. Pobre a letter in regards to the application for discharge of the Pine Tree Way property. (Ex. 13 at 1.) In this letter, Vicki Seidel proposed two alternative amounts for which the federal tax lien against the Pine Tree Way property would be discharged. (*Ibid.*) Under the first suggested alternative, the lien on the Pine Tree Way property would be discharged for $0.00, and under the second suggested alternative it would be discharged for approximately $72,000.00 ("which will be challenged at a later date"). (*Ibid.*)

On November 10, 2004, the Internal Revenue Service faxed Jyme Smith, Escrow Officer for Stewart Title, a commitment letter regarding plaintiff's application for a Certificate of

Discharge for the Pine Tree Way property. (Ex. 14 at 1-4.) A copy of this letter was sent to Vicki Seidel for plaintiff. (*Id.* at 4.) This commitment letter indicated that plaintiff's application was made under 26 U.S.C. § 6325(b)(2)(A), and that the IRS had determined that the United States's lien interest in the Pine Tree Way property was approximately $161,334.55 as of the date of the letter. (*Id.* at 3.) The letter stated that "[u]nless later circumstances disclose the interest of the United States in the property to be greater than the amount shown, we will issue a Certificate discharging the property from the federal tax liens outstanding against [plaintiff] upon receipt of" three items: (1) payment of $161,334.55; (2) "a certified closing statement;" and (3) "[a] copy of the new Grant Deed." (*Id.* at 3-4.)

These three items were provided to the IRS shortly after the commitment letter was sent. (Ex. 15; Ex. 17; Ex. 18.) On November 16, 2004, the IRS received a check from Stewart Title in the amount of $161,334.55. (Ex. 15 at 1.) An attachment to the check indicated that the payment was intended to satisfy the federal tax lien on the Pine Tree Way property. (*Ibid.*) On the same day, the proceeds of the check were applied against Thomas Seidel's outstanding assessment for the tax period ending September 30, 1996. (Ex. 1 at 5.)

The certified copy of the closing statement for the Pine Tree Way property provided to the IRS indicated that a balance of $143.90 was due to the plaintiff after all expenses had been paid. (Ex. 18 at 1.) Payment of this amount to the plaintiff would have been in violation of a condition stated in the commitment letter that prohibited any payment from the proceeds of the sale to plaintiff. (*See* Ex. 14 at 3.) On March 7, 2005, the IRS received a second check from Stewart Title, in the amount of $143.90, the amount listed as owed to plaintiff in the closing statement. (Ex. 16 at 1.) On the same day, the proceeds of the check were applied against

Thomas Seidel's outstanding assessment for the tax period ending September 30, 1996. (Ex. 1 at 5.)

After receipt of the second check from Stewart Title, a Certificate of Discharge of Property From Federal Tax Lien (Form 669-B) was issued with respect to the federal tax lien on the Pine Tree Way property, on March 10, 2005. (Ex. 19 at 2-6.) The certificate of discharge stated that the value of the interest of the United States in the Pine Tree Way property was determined to be $161,478.45, the sum of the amounts of the two checks received from Stewart Title (*Id.* at 3; Ex. 15 at 1; Ex. 16 at 1.) The certificate of discharge further stated that the issuance of the certificate was authorized "under the provisions of section 6325(b)(2)(A) of the Internal Revenue Code," and that "the force and effect of the lien against and upon all other property and rights to property to which the lien is attached, wherever situated," were saved and reserved. (Ex. 19 at 3, 4.)

**4. The First Amended Complaint**

On August 22, 2006, plaintiff filed its original complaint with this Court. The United States filed a motion to dismiss this complaint on February 5, 2006 (resubmitted with Table of Contents by leave of court on February 6, 2006). Plaintiff filed a response to the United States's motion to dismiss on April 3, 2007. Prior to the filing of a reply by the United States, plaintiff filed a first amended complaint on April 11, 2007. By order of April 18, 2007, the Court allowed the filing of plaintiff's first amended complaint, and ordered the United States to answer or otherwise respond to the first amended complaint on or before May 4, 2007.

Plaintiff's first amended complaint alleges two wrongful levies and one improper seizure of funds in connection with a real estate transaction. The complaint alleges that plaintiff's

accounts with Wells Fargo and A.G. Edwards & Sons were each wrongfully levied on one occasion, in the amounts of $4,011.07 and $41,007.32, respectively, to satisfy Thomas Seidel's trust fund recovery penalty assessment. (First Am. Compl. ¶¶ 4-5, 12, 17.) The complaint further alleges that defendant "wrongfully seized an amount from proceeds of a real estate transaction, owned and held in the name of Four Rivers, on November 14, 2004, in the amount of $161,334.55." (*Id.* ¶ 21.)[3]

## ARGUMENT

## I.

## PLAINTIFF'S WRONGFUL LEVY CLAIMS MUST BE DISMISSED BECAUSE THEY ARE UNTIMELY

Plaintiff's wrongful levy claims should be dismissed for lack of subject matter jurisdiction because plaintiff's complaint was filed more than nine months after the dates on which the accounts held in its name were levied. Section 6532(c)(1) provides that a wrongful levy claim must be brought within nine months of the date of the levy. Under *Gordon v. United States*, 649 F.2d 837 (Ct. Cl. 1981), this section is applicable to wrongful levy claims in this Court. Therefore, plaintiff's wrongful levy claims must be dismissed as untimely.

### A. Under *Gordon*, suits challenging wrongful levy claims in the Court of Federal Claims are subject to the limitations period prescribed by Section 6532(c)

Section 7426(a)(1) gives federal district courts jurisdiction over wrongful levy claims:

---

[3]The only notable difference between plaintiff's original complaint and its first amended complaint is the addition of an allegation that "the Federal Trust Fund Recovery Penalty [against Thomas Seidel] was illegally assessed, and fraudulently backdated and concealed from all taxpayers until less than thirty days prior to fling [sic] the instant claim." (First Am. Compl. ¶ 10.) As explained *infra*, this allegation is irrelevant to the issue of whether this Court has jurisdiction over the first amended complaint.

> *Wrongful Levy*. — If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

The primary issue before the Court of Claims in *Gordon* was whether the enactment of 26 U.S.C. § 7426 in the Federal Tax Lien Act of 1966, Pub. L. No. 89-719, 80 Stat. 1125 (1966), undermined previous cases holding that the Court of Claims had implied-in-fact contract jurisdiction over wrongful levy claims under the Tucker Act, 28 U.S.C. § 1491. *See Gordon*, 649 F.2d at 838 (citing *Kirkendall v. United States*, 31 F. Supp. 766, 769-70 (Ct. Cl. 1940)). Although *Gordon* rejected the proposition that the Federal Tax Lien Act of 1966 deprived it of wrongful levy jurisdiction, it did hold that the statute of limitations applicable to wrongful levy actions brought under § 7426(a)(1) is applicable to actions brought in the Court of Claims under the Tucker Act, rather than the 6-year statute of limitations in 28 U.S.C. § 2501 ordinarily applicable to actions brought under the Tucker Act. *See id.* at 843-44.

The statute of limitations for wrongful levy actions enacted in the Federal Tax Lien Act is codified at 26 U.S.C. § 6532(c), which provides as follows:

> (1) *General rule*. — Except as provided by paragraph (2), no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action.
>
> (2) *Period when claim is filed*. — If a request is made for the return of property described in section 6343(b), the 9-month period prescribed in paragraph (1) shall be extended for a period of 12 months from the date of filing of such request or for a period of 6 months from the date of mailing by registered or certified mail by the Secretary to the person making such request of a notice of disallowance of the part of the request to which the action relates, whichever is shorter.

Citing concerns expressed in the legislative history of the Federal Tax Lien Act that third-party

levy disputes should be resolved promptly, the *Gordon* court "construe[d] I.R.C. § 6532(c) to implicitly require levy contests under the Tucker Act to be brought within 9 months of levy." *See Gordon*, 649 F.2d at 844.

**B. The Supreme Court's recent decision in *EC Term of Years Trust v. United States* establishes that the nine-month statute of limitations under Section 6532(c) applies to all wrongful levy actions, but it calls into question *Gordon*'s holding that there is implied-in-fact contract jurisdiction over wrongful levy actions under the Tucker Act**

The Supreme Court recently decided *EC Term of Years Trust v. United States*, ___ S. Ct. ___, 2007 WL 1237845 (U.S. April 30, 2007) , affirming the decision of the Court of Appeals for the Fifth Circuit, 434 F.3d 807, 810 (5th Cir. 2006), which held that, when a wrongful levy action under § 7426 "is available to an individual, then it is his sole and exclusive remedy." The Supreme Court's affirmance of the Fifth Circuit establishes that all wrongful levy actions are subject to the nine-month statute of limitations under § 6532(c), but it calls into question the continuing vitality of *Gordon*'s holding that this Court has implied-in-fact contract jurisdiction under the Tucker Act over wrongful levy claims. Since, as demonstrated below, this Court lacks jurisdiction over plaintiff's wrongful levy claims in any event because they are untimely, the Court does not need to address the issue of whether *EC Term of Years Trust* has implicitly abrogated the *Gordon* court's determination that it had jurisdiction over wrongful levy claims. However, if the Court does choose to address this question, or find it necessary to do so, there is good reason for it to conclude that this holding in *Gordon* is inconsistent with *EC Term of Years Trust*.[4]

---

[4]The United States has continued to believe that *Gordon* incorrectly held that this Court's jurisdiction over third-party wrongful levy claims survived enactment of the Federal Tax Lien (continued...)

The Supreme Court granted *certiorari* in *EC Term of Years Trust* in order to resolve the conflict of the Fifth Circuit's holding in that case with the Ninth Circuit's holding in *WWSM Investors v. United States*, 64 F.3d 456 (1995), that "§ 7426(a)(1) is not the exclusive remedy for third parties challenging a levy." *EC Term of Years Trust*, 2007 WL 1237845 at *3. In both cases, the plaintiffs had missed § 6532(c)'s nine-month deadline for filing a wrongful levy action under § 7426 and had then attempted to file tax refund suits (*i.e.*, suits subject to a two-year statute of limitations) in district court under the general jurisdictional grant of 28 U.S.C. § 1346(a)(1).

As noted above, the Supreme Court granted certiorari in *EC Term of Years Trust* to resolve the conflict between the Fifth and Ninth Circuits over whether the remedy afforded by § 7426(a)(1) is exclusive. *EC Term of Years Trust*, 2007 WL 1237845 at *3. The Court began its discussion of the issue presented by observing that "'[i]n a variety of contexts the Court has held that a precisely-drawn, detailed statute pre-empts more general remedies.'" *Ibid.* Focusing on the different statutes of limitations in the two jurisdictional provisions at issue, the Court concluded

---

[4](...continued)
Act, which provides in 26 U.S.C. § 7426(a)(1) for the bringing of a wrongful levy action in a *district* court. This holding is also inconsistent with the holdings of multiple Circuit Courts of Appeal (prior to the Supreme Court's decision in *EC Term of Years Trust*) that § 7426(a) provides the exclusive remedy for third-party wrongful levy claims. *See Becton Dickinson & Co. v. Wolckenhauer*, 215 F.3d 340, 352 (3d Cir. 2000); *Miller v. Alamo Found.*, 134 F.3d 910, 916 (8th Cir. 1998); *Dahn v. United States*, 127 F.3d 1249, 1253 (10th Cir. 1997); *Williams v. United States*, 947 F.2d 37, 39 (2d Cir. 1991); *Trust Co. v. United States*, 735 F.2d 447, 448 (11th Cir. 1984); *United Sand and Gravel Contractors v. United States*, 624 F.2d 733, 739 (5th Cir. 1980) It is also noteworthy that the Federal Circuit, in an unpublished opinion, has recognized the inconsistency between *Gordon* and the holdings in other circuits, although it did not have occasion to reconsider *Gordon* because the "wrongful levy" suit had been brought (erroneously) by the assessed taxpayer. *See Dennis v. United States*, 976 F.2d 748, 1992 WL 204353, at *2 n.1 (Fed. Cir. 1992) (per curiam) (unpublished table decision).

that the specific remedy of § 7426(a)(1) preempts the general remedy under 28 U.S.C. § 1346(a)(1), the statute of limitations for which is substantially longer than the limitations period for actions under § 7426(a)(1).[5] The Court also rejected the Trust's contention, relying on *United States v. Williams*, 514 U.S. 527 (1995), that "treating § 7426(a)(1) as the exclusive avenue for these claims would amount to a disfavored holding that § 7426(a)(1) implicitly repealed the jurisdictional grant of § 1346(a)(1)." The Court emphasized that in *Williams*—

> [a]lthough we decided that § 1346(a)(1) authorizes a tax-refund claim by a third party whose property was subjected to an allegedly wrongful tax lien, we so held on the specific understanding that no other remedy, not even a timely claim under § 7426(a)(1), was open to the plaintiff in that case. . . . Here, on the contrary, the Trust challenges a levy, not a lien, and could have made a timely claim under § 7426(a)(1) for the relief it now seeks under § 1346(a)(1).

*EC Term of Years Trust*, 2007 WL 1237845 at *4 (footnote omitted).

By affirming the Fifth Circuit, and holding that the specific remedy for third-party wrongful levy claims provided in § 7426(a)(1) –*i.e.*, an action brought in district court, within the nine-month limitations period of § 6532(c)–creates an exclusive remedy that pre-empts more general remedies for which there are longer statues of limitations, *EC Term of Years Trust* calls into question *Gordon*'s holding that this Court has implied-in-fact contract jurisdiction under the

---

[5]The Court observed that the nine-month statute of limitations applicable to wrongful levy actions, which is substantially shorter than the statute of limitations period for tax refund claims, "is no accident," because a longer limitations period could hinder effective tax administration. *See EC Term of Years Trust*, 2007 WL 1237845 at *2. Relying on this observation, the Court reasoned that the enactment of § 7426(a)(1) pre-empted any pre-existing jurisdiction under 28 U.S.C. § 1346(a)(1) because "resort to [the] general remedy" provided by a tax refund action "would effectively extend the limitations period for the specific" remedy provided by § 7426(a)(1). *See id.* at *3. Finding no "countervailing reason" to reject "the force of the better-fitted statute," the Court concluded that the petitioner could not pursue a tax refund suit to recover the property it claimed was wrongfully levied. *See ibid.*

Tucker Act over wrongful levy claims.[6] Like the statute of limitations applicable to tax refund actions, the six-year statute of limitations ordinarily applicable to actions under the Tucker Act is substantially longer than the nine-month limitations period under § 6532(c) applicable to wrongful levy actions. Consequently, applying the reasoning of *EC Term of Years Trust*, it would follow that this Court's implied-in-fact jurisdiction over wrongful levy claims was pre-empted by the enactment of § 7426(a)(1), rather than merely limited by application of the shorter limitations period in § 6532(c), as *Gordon* held.

**C. In any event, this Court lacks jurisdiction to consider plaintiff's claims for wrongful levy because its complaint was not brought within the time required by Section 6532(c)**

Plaintiff's wrongful levy claims were brought outside the time period prescribed in § 6532(c). Section 6532(c)(1) requires a wrongful levy claim to be brought within 9 months of "the date of the levy . . . giving rise to such action," except as provided in § 6532(c)(2). Both of the levies plaintiff alleges were wrongful took place on April 3, 2003, when the notices of the levies were served upon Wells Fargo and A.G. Edwards & Sons. *See* Treas. Reg. § 301.6331-1(a)(1) ("Levy may be made by serving a notice of levy on any person in possession of . . . property or rights to property subject to levy . . . ."); *State Bank of Fraser v. United States*, 861 F.2d 954, 966-67 (6th Cir. 1988) (citing Treas. Reg. § 301.6331-1(a)(1), and holding that "the

[6]The Supreme Court did not expressly address the issue of whether the enactment of § 7426(a)(1), which provides for the bringing of a wrongful levy action in a *district* court, pre-empts jurisdiction for wrongful levy actions under the Tucker Act. The Court had no need to squarely address this issue because both in *EC Term of Years Trust* and *WWSM Investors* the third-party nontaxpayer had filed a refund suit in *district* court. Its holding that the more specific statute (§ 7426(a)(1)) pre-empts the more general one (28 U.S.C. § 1346(a)(1)), however, should apply with equal force to any more general jurisdictional statute, including the more general Tucker Act (28 U.S.C. § 1491).

date of the levy" within the meaning of § 6532(c)(1) for intangible personal property is the date that notice of levy is served upon the possessor of the property). Plaintiff's complaint was filed on August 22, 2006. Thus, plaintiff's complaint was filed more than nine months after the date of all the levies plaintiff alleges were wrongful, and therefore is untimely unless the exception in § 6532(c)(2) applies.

Section 6532(c)(2), however, does not apply to plaintiff's wrongful levy claims. This section extends the 9-month statute of limitations in § 6532(c)(1) if "a request is made for the return of property described in section 6343(b)." Section 6343(b) provides that it is lawful for the Secretary to return property to a person "[i]f the Secretary determines that property has been wrongfully levied upon."[7] Treasury Regulation § 301.6343-2(b) establishes procedures for making a written request for a return of property levied upon pursuant to § 6343(b), and Treas. Reg. § 301.6343-2(c) provides that "[a] request for the return of property wrongfully levied upon will not be considered adequate unless it is a written request containing the information required by paragraph (b) of this section." To qualify as "a request . . . for the return of property described in section 6343(b)" within the meaning of § 6532(c)(2), a request for return of levied property must satisfy the procedural requirements established in Treas. Reg. § 301.6343-2 for the making of such a request. *See Amwest Sur. Ins. Co. v. United States*, 28 F.3d 690, 695-97 (7th Cir. 1994) (holding that 9-month statute of limitations under § 6532(c)(1) was not extended by § 6532(c)(1) where taxpayer's written request for return of levied property was not directed to the district director for the internal revenue district in which the levy was made as required by former Treas.

[7]Under § 6343(b), the Secretary may return the property levied upon, an amount of money equal to the amount of money levied upon, or the amount of money received from a sale of the levied property. § 6343(b)(1)-(3).

Reg. § 301.6343-1(b)(2)).[8]

Plaintiff does not allege that it has made any previous request to the IRS to return any of the levied property that is the subject of this complaint, let alone a request that comports with the requirements of Treas. Reg. § 301.6343-2(b). Consequently, it cannot avail itself of § 6532(c)(2) to extend the general nine-month statute of limitations for wrongful levy claims in § 6532(c)(1). Therefore, plaintiff's wrongful levy claims are all untimely under § 6532(c), as there are no other exceptions, statutory or equitable, to the § 6532(c)(1) limitations period. *See Becton Dickinson*, 215 F.3d at 341, 347-51 (3d Cir. 2000) (holding that "the time limitation in section 6532(c) . . . cannot be equitably tolled, regardless of the equities in a given case"); *Williams v. United States*, 11 Cl. Ct. 189, 191 (1986) (holding that a mental disability could not toll the statute of limitations for bringing a wrongful levy claim because no such exception was provided for in the text of § 6532(c)).[9]

---

[8]Treasury Regulation § 301.6343-1 was amended, and Treas. Reg. § 301.6343-2 was added, effective December 30, 1994. *See* 60 Fed. Reg. 37 (Jan. 3, 1995). The requirements for submitting a request for return of levied property contained in former § 301.6343-1(b) were substantially re-promulgated in § 301.6343-2(b) and (c), including the requirement that a request for return of levied property be directed to the district director of the internal revenue district in which the levy was made. *See* Treas. Reg. § 301.6343-2(b).

[9]For this reason alone, plaintiff's new factual allegation that the assessment of the trust fund recovery penalty against Thomas Seidel was "fraudulently backdated," which "fraud" was allegedly discovered by plaintiff within 30 days of plaintiff's filing suit, *see* First Am. Compl. ¶ 10, but not mentioned in the original complaint, does not to remedy the jurisdictional defects in the original complaint.

Furthermore, even assuming that it were jurisdictionally material whether the trust fund recovery penalty assessment against Thomas Seidel was "illegal," there is no basis for such an allegation. According to the Certificate of Assessments and Payments for the tax period ending September 30, 1996 for Mr. Seidel, the IRS assessed the trust fund recovery penalty against him on October 23, 1996. *See* Ex. 1 at 2. Thomas and Vicki Seidel filed a voluntary bankruptcy

(continued...)

Plaintiff's failure to timely bring their wrongful levy claims deprives this Court of jurisdiction to hear these claims. "It is well established that statutes of limitations for causes of action against the United States, being conditions of the waiver of sovereign immunity, are jurisdictional in nature." *Martinez v. United States*, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (en banc). Thus, the statute of limitations for wrongful levy actions in this Court provided by § 6532(c) is jurisdictional. Therefore, this Court lacks jurisdiction over plaintiff's wrongful levy claims because they were not brought within the time period prescribed by § 6532(c).

**II.**

**THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIM FOR RETURN OF A PAYMENT MADE TO DISCHARGE A FEDERAL TAX LIEN**

Plaintiff's claim that it is entitled to a return of the amount it paid to obtain a discharge of the federal tax lien on the Pine Tree Way property is not properly before this Court. This is so because the certificate of discharge plaintiff obtained for the Pine Tree Way property was obtained pursuant to 26 U.S.C. § 6325(b)(2)(A), and there is no judicial remedy available for recovery of a payment made pursuant to § 6325(b)(2)(A) to obtain a certificate of discharge.

---

[9](...continued)
petition with the Bankruptcy Court for the Northern District of California on October 28, 1996. *See* Ex. 20 at 1. Assuming that plaintiff's allegation is that the assessment was "illegal" because it actually took place after the filing of the Seidels' bankruptcy petition, this contention fails as a matter of law. On October 22, 1994, the Bankruptcy Code was amended, effective on the date of enactment, to exempt from the effects of the automatic stay "the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment." Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, §§ 116, 702, 108 Stat. 4106 (1994) (codified at 11 U.S.C. § 362(b)(9)(D)); *see Bronson v. United States*, 46 F.3d 1573, 1581 (discussing this change in the Bankruptcy Code). Consequently, even if, as plaintiff apparently contends, the trust fund recovery penalty assessment actually took place after October 28, 1996, it would not have violated the automatic stay provided for in 11 U.S.C. § 362(a). *See, e.g., In re Larsen*, 232 B.R. 482, 483 (Bankr. D. Wyo. 1998) (noting that "regarding the automatic stay imposed by § 362, the statute creates an exception . . . for . . . a tax assessment").

Further, even if plaintiff's application for a certificate of discharge had been made under another subsection of § 6325(b), this Court would still lack subject matter jurisdiction over plaintiff's claim for return of the payment.

**A. There is no judicial remedy available for recovery of a payment made pursuant to Section 6325(b)(2)(A) to obtain a certificate of discharge of property from a federal tax lien**

Section 6325(b) of the Internal Revenue Code, which governs the circumstances under which a certificate of discharge of property from a federal tax lien may be issued, contains four avenues by which an owner of property subject to a federal tax lien may obtain a certificate of discharge. Plaintiff applied for and ultimately received a certificate of discharge of the Pine Tree Way property from the federal tax lien filed against plaintiff as the nominee of Thomas Seidel. See Ex. 12 at 3-4; Ex. 19 at 2-6. This certificate of discharge was issued under 6325(b)(2)(A). See Ex. 14 at 3; Ex. 19 at 3. This subsection provides as follows:

> (b) Discharge of property. —
>
> * * * * * *
>
> (2) Part payment; interest of United States valueless. — Subject to such regulations as the Secretary may prescribe, the Secretary may issue a certificate of discharge of any part of the property subject to the lien if —
>
> (A) there is paid over to the Secretary in partial satisfaction of the liability secured by the lien an amount determined by the Secretary, which shall not be less than the value, as determined by the Secretary, of the interest of the United States in the part to be so discharged, or
>
> (B) the Secretary determines at any time that the interest of the United States in the part to be so discharged has no value.
>
> In determining the value of the interest of the United States in the part to be so discharged, the Secretary shall give consideration to the value of such part and to such liens thereon as have priority over the lien of the United States.

A third-party owner of property subject to a federal tax lien who applies for and receives a certificate of discharge under § 6325(b)(2)(A), such as plaintiff, has no judicial avenue available to recover the amount paid to discharge the federal tax lien, as such a person is prohibited both from bringing an action for substitution of value under 26 U.S.C. § 7426(a)(4) and from bringing a refund action to recover the payment. *See* Rev. Rul. 2005-50, 2005-2 C.B. 124.

In *United States v. Williams*, 514 U.S. 527 (1995), (which, as discussed below, has since been superceded by statute), the Supreme Court held that a third party who paid the tax of another in order to remove a lien could prosecute a suit for refund under 28 U.S.C. § 1346(a)(1). *Id.* at 530. In reaching its holding, the Court rejected the government's position that "taxpayer" as used in 28 U.S.C. § 1346(a)(1) is limited to the assessed party, concluding that such a reading "would leave people in the [third party's] position without a remedy," contrary to congressional intent. *Id.* at 536. The *Williams* Court went on to consider and reject the government's argument that an adequate alternate administrative remedy would be afforded by § 6325(b)(3),[10] concluding that the administrative remedy afforded by § 6325(b)(3) was inadequate because the remedy was "available only at the Government's discretion." *Id.* at 537-38.

After *Williams* was decided, Congress added sections 6325(b)(4) and 7426(a) to the

---

[10]Section 6325(b)(3) permits the Secretary to issue a certificate of discharge of property from a federal tax lien if the owner of the property sells the property and enters into an agreement with the Secretary concerning the use of the sale proceeds:

> Subject to such regulations as the Secretary may prescribe, the Secretary may issue a certificate of discharge of any part of the property subject to the lien if such part of the property is sold and, pursuant to an agreement with the Secretary, the proceeds of such sale are to be held, as a fund subject to the liens and claims of the United States, in the same manner and with the same priority as such liens and claims had with respect to the discharged property.

Internal Revenue Code as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685 (1998). Section 6325(b)(4) added an additional means to the Internal Revenue Code by which a property holder can request a certificate of discharge:

> *Right of substitution of value.* —
>
> (A) *In general.* — At the request of the owner of any property subject to any lien imposed by this chapter, the Secretary shall issue a certificate of discharge of such property if such owner—
>
> (i) deposits with the Secretary an amount of money equal to the value of the interest of the United States (as determined by the Secretary) in the property; or
>
> (ii) furnishes a bond acceptable to the Secretary in a like amount.
>
> (B) *Refund of deposit with interest and release of bond.* — The Secretary shall refund the amount so deposited (and shall pay interest at the overpayment rate under section 6621), and shall release such bond, to the extent that the Secretary determines that—
>
> (i) the unsatisfied liability giving rise to the lien can be satisfied from a source other than such property; or
>
> (ii) the value of the interest of the United States in the property is less than the Secretary's prior determination of such value.
>
> (C) *Use of deposit, etc., if action to contest lien not filed.* — If no action is filed under section 7426(a)(4) within the period prescribed therefor, the Secretary shall, within 60 days after the expiration of such period—
>
> (i) apply the amount deposited, or collect on such bond, to the extent necessary to satisfy the unsatisfied liability secured by the lien; and
>
> (ii) refund (with interest as described in subparagraph (B)) any portion of the amount deposited which is not used to satisfy such liability.
>
> (D) *Exception.* — Subparagraph (A) shall not apply if the owner of the property is the person whose unsatisfied liability gave rise to the lien.

Section 7426(a)(4) permits a person who has applied for a certificate of discharge under § 6325(b)(4) to bring an action in district court to challenge the Secretary's valuation of the United

States's lien interest in the property:

> *Substitution of value.* — If a certificate of discharge is issued to any person under section 6325(b)(4) with respect to any property, such person may, within 120 days after the day on which such certificate is issued, bring a civil action against the United States in a district court of the United States for a determination of whether the value of the interest of the United States (if any) in such property is less than the value determined by the Secretary. *No other action may be brought by such person for such a determination.*

(Emphasis added.)

Congress enacted Sections 6325(b)(4) and 7426(a)(4) in order to provide an adequate remedy to persons situated similarly to the third party owner of property subject to a federal tax lien in *Williams*. See S. Rep. No. 174, 105th Cong., 2d Sess. (1998), at 54-55. Specifically, Congress intended to remedy the defect the *Williams* court identified in the procedure under § 6325(b)(3) by mandating that the Secretary issue a certificate of discharge when all the statutory conditions in § 6325(b)(4) have been met, and by providing, in § 7426(a)(4), an avenue for judicial challenge of the IRS's valuation of the United States's interest in the property at issue in virtue of a federal tax lien that is "similar to that provided to third parties who are subject to wrongful levy of property." *Id.* at 54. These sections accomplish this goal by requiring, rather than merely permitting, the issuance of a certificate of discharge if the conditions in § 6325(b)(4) are met. *See* § 6325(b)(4)(a) (if the statutory conditions are met and "the owner of any property subject to any lien imposed by this chapter" requests a certificate of discharge, "the Secretary *shall* issue a certificate of discharge of such property" (emphasis added)).

Although the IRS gave Vicki Seidel the instructions that detailed the requirements and application of each of the subparagraphs of § 6325(b), including § 6325(b)(4), *see* Ex. 11 at 1-5, she chose to submit an application for discharge of the Pine Tree Way property on behalf of

plaintiff under conditions that satisfied the requirements of § 6325(b)(2)(A), *not* those of § 6325(b)(4). A person such as plaintiff who requests and receives a certificate of discharge under § 6325(b)(2)(A) cannot bring an action under § 7426(a)(4) because such an action can only be brought if a certificate of discharge is issued under § 6325(b)(4). Section 7426(a)(4) permits a suit to challenge the Secretary's valuation of the United States's lien interest in property only if "a certificate of discharge is issued . . . under section 6325(b)(4)."

Thus, as the plain language of § 7426(a)(4) makes clear, issuance of a certificate of discharge under § 6325(b)(4) is a prerequisite to jurisdiction in an action for substitution of value under § 7426(a)(4). *See Cryster v. United States*, 2006 WL 3203585, at *6 (E.D. Wash., Slip Op. Nov. 2, 2006); *Wilson v. United States*, 2004 WL 790220, at *2 (E.D. Tenn. Feb. 24, 2004). Therefore, plaintiff, who applied for and received a certificate of discharge under § 6325(b)(2)(A) for the Pine Tree Way property, cannot avail itself of § 7426(a)(4) to challenge the IRS's valuation of the federal tax lien interest of the United States in the Pine Tree Way property. *See Cryster*, 2006 WL 3203585, at *6 ("Courts lack subject matter jurisdiction over cases brought challenging the IRS's valuation determination if the certificate of discharge was sought under section 6325(b)(2), rather than section 6325(b)(4).")

Furthermore, a person such as plaintiff who requests and receives a certificate of discharge under § 6325(b)(2)(A) cannot bring a refund suit to recover the amount paid to obtain the certificate of discharge, notwithstanding the Supreme Court's holding in *Williams*. Relying on the legislative history and the text of § 7426(a), two courts and one Revenue Ruling have concluded that Congress intended to create an exclusive remedy, in derogation of the remedy of a refund suit, when it enacted §§ 6325(b)(4) and 7426(a)(4). *See Cryster*, 2006 WL

3202585, at *5; *City of Richmond v. United States*, 348 F. Supp. 2d 807, 814 (E.D. Ky. 2004); Rev. Rul. 2005-50. These authorities have reached this conclusion for the following reasons. First, as the legislative history makes plain, "[s]ections 6325(b)(4) and 7426(a)(4) provide the remedy that was unavailable to the third party in *Williams*." Rev. Rul. 2005-50; *see also EC Term of Years Trust*, 2007 WL 1237845, at *4 (explaining that the *Williams* holding was based upon "the specific understanding that no other remedy . . . was open to the plaintiff in that case"); *Cryster*, 2006 WL 3202585, at *5 (following Rev. Rul. 2005-50). Furthermore, § 7426(a)(4) expressly provides that "[n]o other action may be brought by such a person for such a determination." Finally, permitting a third party who wishes to challenge a valuation of a federal tax lien to bring a refund suit to challenge the valuation would conflict with Congress's intent that such disputes be resolved quickly, as evidenced by the 120-day period of limitation provided for in § 7426(a)(4). Rev. Rul. 2005-50 ("Permitting a third party to bring another action, such as a refund suit, would conflict with the 120-day limit Congress imposed on actions brought under section 7426(a)(4)."); *see also Cryster*, 2006 WL 3202585, at *5 (quoting Rev. Rul 2005-50 for this proposition).[11]

**B. Even if plaintiff had applied for a certificate of discharge under another provision of Section 6325(b), this Court would lack subject matter jurisdiction over plaintiff's claim for return of the payment made to obtain the certificate of discharge**

---

[11]Even if this Court were hold that a third party owner of property subject to a federal tax lien who makes a payment to the IRS in order to discharge the lien is not precluded from bringing a refund suit because §§ 6325(b)(4) and 7426(a)(1) provide an exclusive remedy, this Court would still not have jurisdiction over plaintiff's claim for return of the payment made to discharge the federal tax lien on the Pine Tree Way property because plaintiff has not satisfied all the jurisdictional prerequisites for bringing a refund suit. *See* 26 U.S.C. §§ 7422(a), 6532(a); *Flora v. United States*, 362 U.S. 145, 150 (1960); *Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993); *see also* RCFC 9(h)(6).

Even if plaintiff's application for a certificate of discharge had been made under § 6325(b)(3) or § 6325(b)(4), this Court would still lack jurisdiction over plaintiff's claim, for two independent reasons.

First, although § 7426(a) permits a third parties to bring suit to challenge the IRS's valuation of the United States' interest in a federal tax lien reflected in a certificate of discharge issued under either § 6325(b)(3) or § 6325(b)(4), subject matter jurisdiction to bring such a suit lies exclusively with the federal district courts, not with this Court. Section 7426(a)(3) permits a person who claims an interest "in any amount held as a fund" pursuant to an agreement under § 6325(b)(3) to "bring a civil action against the United States" to pursue such a claim. The statute, however, provides for such actions only "in a *district court of the United States*." § 7426(a)(3) (emphasis added). Similarly, § 7426(a)(4) permits a person who is issued a certificate of discharge under § 6325(b)(4) to "bring a civil action against the United States" to challenge the valuation of the federal tax lien interest reflected in the certificate of discharge, but only provides for such an action "in a *district court of the United States*." (Emphasis added).

Second, the statutes of limitations for bringing an action under either § 7426(a)(3) or § 7426(a)(4) have expired. An action under § 7426(a)(3) must be brought within 90 days of the agreement under § 6325(b)(3) between the Secretary and the owner of the property subject to a federal tax lien that creates the sales proceeds fund. *See* § 6532(c)(1); Treas. Reg. § 301.6532-3(a). Even assuming that, somehow, the certificate of discharge issued by the IRS for the Pine Tree Way property constituted an agreement under § 6325(b)(3), plaintiff's complaint would still be untimely, as this certificate of discharge was issued on March 10, 2005, and the complaint was not filed until August 22, 2006. Similarly, an action under § 7426(a)(4) must be brought within

120 days of the issuance of the certificate of discharge. § 7426(a)(4). Consequently, even if plaintiff's application for a certificate of discharge had been made under § 6325(b)(4), plaintiff's action would be untimely.

**III.**

**SECTION 7433A DOES NOT PROVIDE THIS COURT AN ALTERNATE BASIS FOR JURISDICTION OVER PLAINTIFF'S CLAIMS**

Plaintiff also alleges that "[j]urisdiction is also conferred by . . . 26 U.S.C.[] § 7433A." First Am. Compl. ¶ 2. This contention is without merit, for several independent reasons.

First, § 7433A does not provide a basis for jurisdiction for this suit because it does not constitute a waiver of the United States's sovereign immunity. Section 7433 provides for a civil action for damages, which may be filed by a taxpayer in district court, for certain unauthorized collection actions. "Except as provided in § 7432 ["Civil Damages for Failure to Release Lien"–inapplicable here], such civil action shall be the exclusive remedy for recovering damages resulting from such actions." § 7433(a). Section 7433A makes § 7433 applicable "to the acts and omissions of any person performing services under a qualified tax collection contract" as if that person were an IRS employee, subject to the limitations in § 7433A(b). Among those limitations are that "[a]ny civil action brought under section 7433 by reason of [§ 7433A] shall be brought against the person who entered into the qualified tax collection contract with the Secretary and shall not be brought against the United States." § 7433A(b)(1). Thus, § 7433A does not waive the United States's sovereign immunity from suit, and hence does not provide a basis for jurisdiction in this Court.[12] *See Perri v. United States*, 340 F.3d 1337, 1340-41 (Fed. Cir. 2003)

[12]In addition, plaintiff's invocation of § 7433A as a basis for jurisdiction in this action (continued...)

(when "jurisdiction of Court of Federal Claims is invoked to recover damages on a statutory claim" against the United States, the Court lacks jurisdiction unless the statute waives sovereign immunity).

Second, the Court of Federal Claims lacks jurisdiction over § 7433 claims even when they are not founded on § 7433A. As noted above, § 7433(a) expressly permits suit only "in a district court of the United States." This Court thus does not have jurisdiction to hear § 7433 claims.[13] *See Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002) (holding that because Court of Federal Claims is not a district court, it lacks subject matter jurisdiction over claims founded upon § 7433); *Standifird v. United States*, 32 Fed. Cl. 731, 734 (1995). Therefore, since § 7433A provides that § 7433 applies to qualified tax collection contracts, it follows that because this Court lacks jurisdiction over § 7433 claims, it also lacks jurisdiction over § 7433A claims as well.

Finally, § 7433A was added to the Internal Revenue Code by the American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418, § 881 (2004), effective October 10, 2004. Since the levies at issue occurred in 2003, § 7433A does not apply to them in any event.

---

[12](...continued)
fails because the levies that are the subject of the complaint were executed by the IRS, not by a third-party acting under a qualified tax collection contract.

[13]For this reason, even if plaintiff had actually intended to refer in the complaint to § 7433(a), rather than § 7433A, plaintiff's argument that it had an alternate basis for jurisdiction under that provision in this Court would be unavailing.

## CONCLUSION

For all of the above reasons, the United States requests that this Court dismiss plaintiff's first amended complaint for lack of subject matter jurisdiction.

Respectfully submitted,

May 3, 2007

s/ Joseph B. Syverson
JOSEPH B. SYVERSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6508

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

s/ Mary M. Abate
Of Counsel

May 3, 2007