T.C. Memo. 2007-201

UNITED STATES TAX COURT

LAURA K. DAVIS, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 144-05L, 145-05L, 146-05L, 147-05L, 149-05L. Filed July 24, 2007.

These cases brought pursuant to sec. 6330, I.R.C., are before the Court to determine whether Ps must pay penalties pursuant to sec. 6673(a)(1), I.R.C., for instituting procedures primarily for delay, etc., and whether counsel must pay R’s excess counsel fees pursuant to sec. 6673(a)(2), I.R.C., for unreasonably and vexatiously multiplying the proceedings.

1. Held: P husband penalized pursuant to sec. 6673(a)(1), I.R.C., for instituting and maintaining proceedings primarily for delay, making frivolous arguments and taking groundless positions, and

---

[1] Cases of the following petitioners are consolidated herewith: JLD Asset Management Co., a.k.a. JLD Asset Management Trust, Jeffrey Davis, Trustee, docket No. 145-05L; Jeffrey W. Davis, docket No. 146-05L; Jeffrey W. Davis, docket No. 147-05L; and Laura K. Davis, docket No. 149-05L.

GOVERNMENT'S EXHIBIT "A"

unreasonably failing to pursue available administrative remedies.

2. Held, further, Ps' lead counsel liable for R's attorney's fees since he signed pleadings and other papers knowing Ps' claims to be meritless and, thus, abused the judicial process and unreasonably and vexatiously multiplied the proceedings.

Robert Alan Jones, Maria Angelisa L. Lacorte, and Mario P. Fenu, for petitioners.

Alan J. Tomsic and Paul C. Feinberg, for respondent.

MEMORANDUM OPINION

HALPERN, Judge: Each of the cases in this consolidated proceeding is before the Court to determine whether the petitioner therein must pay a penalty pursuant to section 6673(a)(1) and whether two of petitioners' counsel common to all of the cases, Robert Alan Jones (Mr. Jones) and Maria Angelisa L. Lacorte (Ms. Lacorte), must pay certain of respondent's costs pursuant to section 6673(a)(2). For the reasons that follow, we impose on petitioner Jeffrey W. Davis (Mr. Davis) penalties totaling $15,000 and on Mr. Jones costs totaling $25,800.

Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Generally, we shall use the term "counsel" to refer to Mr. Jones and Ms. Lacorte.

## Background

### Introduction

Each of these cases began with a petition for review of a determination by respondent's Appeals Office (Appeals) that respondent might proceed with certain activities to collect unpaid tax (or taxes) owed by petitioner. The docket numbers, petitioners, and years in issue are as follows:

| Docket No. | Petitioner | Year(s) |
|---|---|---|
| 144-05L | Laura K. Davis | 1999 |
| 145-05L | JLD Asset Management Co., a/k/a JLD Asset Management Trust, Jeffrey Davis, Trustee | 1999 |
| 146-05L | Jeffrey W. Davis | 1997, 1998 |
| 147-05L | Jeffrey W. Davis | 1999 |
| 149-05L | Laura K. Davis | 1997, 1998 |

Each petitioner resided in Beavercreek, Ohio, at the time he or she (without distinction, he) filed the petition.

At the call of these cases from the calendar for the trial session of the Court at Las Vegas, Nevada, commencing on February 27, 2006 (the Las Vegas trial session), the Court received from the parties to each case a proposed decision document sustaining Appeals' determination that respondent might proceed with the collection activities in question in that case. We filed each proposed decision document as a stipulation of settlement to facilitate the Court's dealing with the penalty and costs issues before us today. We ordered each petitioner to show cause in writing why, in each case in which he is involved, a penalty

should not be imposed on him pursuant to section 6673(a)(1), and we ordered Mr. Jones and Ms. Lacorte to show cause why, in each case, excess costs should not be imposed on them pursuant to section 6673(a)(2). We also ordered respondent to inform the Court of his fees and costs incurred in these cases and of his positions with respect to the penalties and costs at issue. We explained to the parties and to counsel that our orders to show cause were motivated by our concern that petitioners had raised, and their counsel had abetted them in raising, meritless arguments that had served merely to delay the collection of taxes owing. In addition to ordering petitioners and their counsel to respond in writing to our orders to show cause, we accorded each the opportunity to appear and be heard. Finally, in the face of the stipulations of settlement, we vacated the orders we had entered granting, in whole or in part, respondent’s motions for summary judgment.

1997 and 1998 Tax Liabilities

On March 5, 2001, respondent issued to Mr. Davis and petitioner Laura K. Davis (Ms. Davis) a notice of deficiency with respect to their joint 1997 and 1998 Federal income taxes. Mr. Davis timely filed a petition in this Court for a redetermination of the deficiencies; Ms. Davis did not file a petition. On February 11, 2003, we entered an order and decision in Mr. Davis’s case, sustaining the deficiencies in full and imposing a

penalty of $25,000 upon him under section 6673(a)(1) for instituting the case for purposes of delay and for making frivolous arguments.[2] Mr. Davis did not appeal the order and decision. Respondent timely assessed the 1997 and 1998 deficiencies and other amounts on August 1, 2001 (Ms. Davis, for

---

[2] In support of our order and decision, we relied on the following deemed admissions (paragraph numbers and ellipses omitted):

> Petitioner Jeffrey W. Davis created a series of sham trusts designed to assist him in evading the payment of his Federal income and employment taxes.
>
> Petitioner Jeffrey W. Davis created the JLD Asset Management Trust to avoid paying his Federal taxes.
>
> The JLD Asset Management Trust is a sham trust.
>
> The Davis Charitable Trust is a sham trust.
>
> The petitioner Jeffrey W. Davis instituted this case to delay the assessment of his individual income taxes for the taxable years 1997 and 1998.
>
> The petitioner Jeffrey W. Davis instituted this case to use the Tax Court as a forum to present frivolous constitutional and procedural arguments against the United States' Federal income tax system.
>
> The petitioner Jeffrey W. Davis fired his attorney, Scott W. Gross, after Mr. Gross refused to file frivolous motions in connection with this case.
>
> The petitioner Jeffrey W. Davis intentionally, recklessly and negligently disregarded the Federal tax laws in the preparation of his 1997 and 1998 Federal income tax returns.

1997), September 24, 2001 (Ms. Davis, for 1998), and August 19, 2003 (Mr. Davis, for 1997 and 1998).

1999 Tax Liabilities

On April 7, 2003, respondent issued to petitioner JLD Asset Management Trust, Jeffrey W. Davis, trustee (the trust and the trustee, respectively), a notice of deficiency with respect to the trust's 1999 Federal income tax and issued to Mr. and Ms. Davis a notice of deficiency with respect to their 1999 Federal income tax. Neither the trustee, Mr. Davis, nor Ms. Davis filed a petition for redetermination of the deficiency, and respondent timely assessed the 1999 deficiencies and other amounts on August 19, 2003 (Mr. and Ms. Davis), and September 15, 2003 (the trust).

Notices

On March 15, 2004, respondent sent to each petitioner with respect to each year of that petitioner in issue a Final Notice – Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice).

On March 19, 2004, respondent sent to each petitioner with respect to each year of that petitioner in issue a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (NFTL). Each NFTL notified the recipient that respondent had filed a lien with respect to the recipient's unpaid Federal income tax liability (or liabilities) for the year (or years) in issue.

Responses and Hearing

On April 13, 2004, in response to the final notices and the NFTLs, each petitioner filed with Appeals an Internal Revenue Service (IRS) Form 12153, Request for a Collection Due Process Hearing. On those forms, petitioners commonly allege that there exist “whipsaws” with related entities or persons. Ms. Davis alleges that she is an “innocent spouse”. Mr. Jones signed the Forms 12153 as each petitioner’s authorized representative.

On June 18, 2004, in response to the Forms 12153, an Appeals employee, Settlement Officer Michael A. Freitag (the settlement officer), sent Mr. Jones a letter scheduling a hearing for July 19, 2004, with respect to all of the hearing requests. Among other things, the letter states that, if Mr. Jones wishes to propose collections alternatives, such as an installment agreement or an offer-in-compromise, he must complete and submit current financial statements, along with verification, prior to the hearing date. The hearing was rescheduled for August 24, 2004, but Mr. Jones failed to appear. On September 7, 2004, the settlement officer held a telephone conference with Mr. Jones.

Determinations

On December 2, 2004, Appeals issued to each petitioner a “Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330” (notice). The notices sustain the filing of the lien and the proposed levy action. Each notice is

accompanied by an attachment, wherein the settlement officer sets forth the analysis leading to his conclusion that the collection actions should be sustained. The analysis in each attachment is similar, and the following are among the facts, generally similar in each attachment, on which the settlement officer relied: Petitioner could not challenge the underlying tax liability because he had received a notice of deficiency. Petitioner had neither requested release or withdrawal of the NFTL nor shown that he was entitled to release or withdrawal of the NFTL. No collection alternatives, such as an offer-in-compromise or an installment agreement, were finalized with petitioner because he either did not respond with any alternatives or still believes that he does not owe the liability and that this is a whipsaw case. Where relevant, petitioner had not provided information necessary for innocent spouse relief for Ms. Davis. Appeals had verified the assessments of tax. The requirements of all applicable laws and administrative procedures had been met. The proposed collection action balanced the need for efficient collection with petitioner’s concern that any collection action be no more intrusive than necessary.

Petitions

On January 3, 2005, each petitioner timely petitioned for review of the notice received by that petitioner. Each petitioner assigned error in substantially the same terms.

Except as noted, each (1) sought to challenge the tax liability underlying the collection actions at issue; (2) submitted that there were impermissible "whipsaws" with related entities or persons; (3) submitted that the settlement officer did not make a determination from petitioner's tax returns; (4) claimed the settlement officer did not allow him to raise collection alternatives, including an offer-in-compromise; (5) claimed the settlement officer did not allow sufficient time for him to retrieve IRS documentation to test whether the period of limitations on assessment had expired; (6) alleged that the assessments were time barred and violated the statute of limitations; and (7) in docket Nos. 144-05L and 149-05L, claimed "innocent spouse protection" for Ms. Davis. Mr. Jones executed each petition on behalf of the named petitioner. Respondent answered the petitions, denying or otherwise countering those claims.

The petitions are substantially similar to petitions filed by Mr. Jones on behalf of taxpayers in at least eight other cases, six of them calendared for trial at the Las Vegas trial session. Three of those cases are the subject of our report in Gillespie v. Commissioner, released today as T.C. Memo. 2007-202.

Ms. Lacorte’s Appearance

On November 17, 2005, Ms. Lacorte filed an entry of appearance in each case.

Amended Petitions

On December 16, 2005, approximately 2-1/2 months before commencement of the Las Vegas trial session, each petitioner moved for leave to amend petition. Those motions are signed by Mr. Jones and Ms. Lacorte. The accompanying amended petitions were lodged with the Court on the same date, and, on December 19, 2005, we ordered respondent to respond to the motions for leave to amend. On January 5 and 6, 2007, we filed respondent’s objections to the motions. On January 10, 2006, we granted all of the motions, and we filed the amended petitions.[3] Mr. Jones executed each amended petition on behalf of the named petitioner.

In each amended petition, petitioner avers numerous instances of abuse of discretion by the settlement officer; viz,

---

[3] Respondent objected to the motions on, among other grounds, that the proposed amendments were frivolous or groundless, provided no basis for relief, and were being raised solely for the purpose of delay. We granted the motions in light of the facts before us and the standard set forth in Rule 41(a) that leave to amend shall be freely given. However, we directed the attention of petitioners’ counsel to the provisions of Rule 33(b), concerning the effect of signing a pleading (see discussion of Rule 33(b) infra), and stated: “At the trial of this case, the Court expects petitioners’ counsel to show that the claims in the amended petition are well grounded in fact and otherwise supported as set forth in Rule 33(b). The Court warns petitioners and their counsel that, if justified, the Court will not hesitate to impose sanctions and costs as provided for in section 6673.”

(1) He did not give petitioner adequate time to make his case, including raising collection alternatives, such as an offer-in-compromise; (2) petitioner’s counsel was not provided documentation showing that the IRS had met the requirements of all applicable laws and administrative procedures; (3) the settlement officer failed to provide petitioner a copy of his individual master file; (4) the assessment of tax was backdated and collection was time barred; (5) the settlement officer was biased against petitioner “because of Petitioner’s use of the trust system”; (6) “there are impermissible ‘whipsaws’ with related entities or individuals”; and (7) in docket Nos. 144-05L and 149-05L, Ms. Davis is entitled to “‘innocent spouse protection’”. In each case, respondent denied those averments.

The amended petitions are substantially similar to petitions filed by Mr. Jones on behalf of taxpayers in at least six other cases calendared for trial at the Las Vegas trial session. Three of those cases are the subject of our report in Gillespie v. Commissioner, supra.

Motions for Summary Judgment and Motion for Penalty

On January 5, 2006, in docket Nos. 146-05L and 149-05L, and on January 12, 2006, in the remaining cases, respondent moved for summary judgment. He relied on similar grounds in support of each motion: Since petitioner had received a notice of deficiency with respect to the underlying liability or

liabilities (without distinction, liability), he could not challenge the liability. Thus, at his collection due process hearing, petitioner could raise only collection alternatives. Although nothing prevented him from doing so, he did not raise any collection alternative, nor did Ms. Davis present any basis for innocent spouse relief. Finally, no other error assigned by petitioner raised any justiciable issue or showed any abuse of discretion by the settlement officer. Respondent also moved in docket No. 146-05L (concerning Mr. Davis's 1997 and 1998 taxable years) that we impose a penalty on him under section 6673 in the amount of $25,000, "as petitioner has instituted this proceeding primarily for the purpose of delay, and petitioner's position * * * is frivolous or groundless."

Petitioners' Objections

On February 6, 2006, each petitioner filed an objection to respondent's motion for summary judgment. No petitioner disputed that he failed to present collection alternatives. Each argued that the settlement officer had not given him adequate time to make his case. Each claimed that he required additional information to prepare collection alternatives and to resolve other issues relating to the years at issue. In docket Nos. 144-05L, 145-05L, and 147-05L, petitioners specifically argued that the settlement officer failed to allow additional time to retrieve relevant documents from the IRS. Each petitioner argued

that the settlement officer was biased against him on account of his use of the trust system and that there were impermissible whipsaws with related entities or individuals. Ms. Davis, in docket Nos. 144-05L and 149-05L, claimed that she is an innocent spouse. Petitioners in each case except for docket No. 145-05L also continued to argue that the assessments of tax on which the collection actions were based were time barred. Mr. Davis, in docket No. 146-05L, contested the section 6673 penalty. Mr. Jones and Ms. Lacorte signed each of the objections.

Orders Disposing of Motions for Summary Judgment and Motion for Penalty

On February 17, 2006, we issued orders granting in full respondent’s motion for summary judgment in docket No. 145-05L and granting in part his motions for summary judgment in the other four cases. In substantial part, the orders were similar. In each, we concluded that petitioner was prohibited from challenging the underlying liability. We found that petitioner had approximately 5-1/2 months to submit information to the settlement officer regarding collection alternatives but failed to do so. We determined that, where petitioner had claimed that he needed additional documents, he had not described to the settlement officer or to the Court those documents or their relevance. We concluded that the settlement officer need not have waited any longer than he did to make his determination. We rejected petitioner’s claim that the settlement officer was

required to provide documentation verifying that all applicable laws and procedures were followed or to produce petitioner’s individual or business master files. We cited the following authority specifically holding that an Appeals officer is not required to produce that type of information. Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002); Lunsford v. Commissioner, 117 T.C. 183, 187-188 (2001); Carrillo v. Commissioner, T.C. Memo. 2005-290. We found petitioner’s claim of bias to be frivolous and unsubstantiated. We found that, beyond Ms. Davis’s bare assertion that she was entitled to innocent spouse relief, she had done nothing (e.g., setting forth facts showing a genuine issue for trial) to substantiate a claim to that relief. In the orders governing the four cases in which we granted respondent’s motion for summary judgment only in part, we denied the motion only with respect to petitioner’s affirmative defense of the statute of limitations.[4] Each of those petitioners based that defense on his claim that respondent had backdated his assessment (or assessments) of tax and, as a result, collection of the tax was time barred. In turn, each based his claim of backdating on his argument concerning the “cycle post date” of the assessment. Since that argument was unclear, but we were concerned that it might involve a material

---

[4] We determined that petitioner in docket No. 145-05L conceded that defense because the issue was not addressed in his opposition to the motion for summary judgment.

issue of fact, we declined to adjudicate summarily petitioners' affirmative defense claims.

By the order we issued in docket No. 146-05L, we also denied respondent's motion for a penalty under section 6673(a)(1). We explained that, because we were only granting partial summary judgment in that case, we would await further developments before determining whether a penalty is appropriate. We added that we would also consider imposing excess costs on counsel pursuant to section 6673(a)(2) should we conclude that counsel had taken actions to multiply the proceeding unreasonably and vexatiously. We likewise warned petitioners and counsel in the orders issued in the other cases that we were considering the imposition of penalties and costs. In all of the orders, we stated our impressions that petitioner, aided by counsel, may have (1) instituted and maintained the proceeding before this Court primarily to delay the collection of his income tax liability, (2) in support of that goal, raised frivolous arguments and relied on groundless claims, and (3) unreasonably failed to pursue his opportunity for a section 6330 hearing. We cataloged our concerns with respect to each petitioner generally as follows: He had not challenged respondent's statements in support of the motion for summary judgment that petitioner received a notice of deficiency and failed to petition the Tax Court; he had failed to present the settlement officer any

collection alternatives or the financial information necessary to consider collection alternatives; and, in the amended petition, he had made claims that had little or no substance, all but one of which we had rejected. We also noted the similarity of the amended petitions to petitions filed by counsel in other cases calendared for trial at the Las Vegas trial session and the shortness of the period between filing those amended petitions and the start of the trial session. We expressed our skepticism with respect to the “cycle post date” argument made in support of the statute of limitations defense, stating our suspicion, based on the rejection of the same or a similar argument in Dahmer v. United States, 90 AFTR 2d 2002-6084, 2002-2 USTC par. 50,806 (W.D. Mo. 2002) (Magistrate Judge’s order), that the argument was frivolous. In docket No. 145-05L, the case in which we granted respondent’s motion for summary judgment in full, we ordered petitioner and counsel to appear and be prepared to show cause during the Las Vegas trial session why a penalty and excess costs should not be imposed on them, respectively. In the other cases, we left the penalty and cost issues for later resolution.

The Las Vegas Trial Session

As above stated, at the call of these cases from the calendar for the Las Vegas trial session, we received from the parties to each case a decision document (which we filed as a stipulation of settlement) sustaining Appeals’ determination that

respondent may proceed with the collection activities in question. In the face of the stipulations of settlement, we vacated our orders granting in whole or in part respondent’s motions for summary judgment. We accorded each petitioner and counsel the opportunity to appear and be heard with respect to our orders to show cause why we should not impose on petitioner a penalty pursuant to section 6673(a)(1) and impose on counsel excess costs pursuant to section 6673(a)(2).

Mr. Davis appeared and was heard on February 28, 2006. The salient points of his testimony are as follows: He did not recall being advised that, because he received notices of deficiency, he could not challenge his underlying tax liability in a section 6330 hearing; he did not carefully review the amended petitions; Mr. Jones suggested filing the amended petitions; he did not recall reviewing the oppositions to respondent’s motions for summary judgment; and he basically relied on the legal advice of Mr. Jones and Ms. Lacorte in contesting respondent’s collection actions and in filing his petitions in these cases. Ms. Davis did not to appear and, therefore, was not heard.

Victoria Osborn (Ms. Osborn) was called by petitioners and, in pertinent part, testified as follows: She lives in Colorado and has a bachelor of science from the University of Colorado, with concentrations in accounting and finance. Her profession is

public accountant, forensic accountant, and certified fraud examiner. She is not, however, a certified public accountant, nor is she licensed by the State of Colorado to practice accounting. She has never been employed by the IRS, and is not an enrolled agent or otherwise authorized to represent taxpayers before the IRS pursuant to Treasury Department Circular No. 230, Practice Before the Internal Revenue Service, 31 C.F.R. Part 10 (Rev. 6-2005). Among other things, she testified to the following: She had told Mr. Jones that the assessments of tax in these cases with respect to the taxable years in issue of both Mr. and Ms. Davis were time barred. The date of assessment of tax is the date an officer of the IRS signs a summary record of assessment. The data necessary to compile a summary record of assessment, however, is only available for that purpose after it has been posted to the IRS's master file system. On the basis of her examinations of transcripts of petitioners' individual master files for the years at issue, which revealed postings of assessments on dates subsequent to the assessment dates shown on those transcripts, she had reached the conclusion that the assessment dates were not accurate and the true assessment dates were the dates of the postings.

Both Mr. Jones and Ms. Lacorte were accorded the opportunity to be heard with respect to our orders to show cause why excess costs should not be imposed on them pursuant to section

6673(a)(2), but each preferred to respond to our orders in writing.

## Discussion

### I. Introduction

Section 6673(a) provides for the imposition of sanctions and the award of costs in Tax Court proceedings. In pertinent part, the provision provides:

> SEC. 6673. SANCTIONS AND COSTS AWARDED BY COURTS.
>
> (a) Tax Court Proceedings.--
>
> (1) Procedures instituted primarily for delay, etc.–-Whenever it appears to the Tax Court that--
>
> (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,
>
> (B) the taxpayer's position in such proceeding is frivolous or groundless, or
>
> (C) the taxpayer unreasonably failed to pursue available administrative remedies,
>
> the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000.
>
> (2) Counsel's liability for excessive costs.–-Whenever it appears to the Tax Court that any attorney or other person admitted to practice before the Tax Court has multiplied the proceedings in any case unreasonably and vexatiously, the Tax Court may require--
>
> (A) that such attorney or other person pay personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct * * *

## II. Section 6673(a)(1) Liability of Petitioners

### A. Positions of the Parties

Respondent's position is that we should impose a penalty against Mr. Davis in docket Nos. 146-05L (concerning Mr. Davis's 1997 and 1998 taxable years) and 147-05L (concerning his 1999 taxable year) for advancing frivolous arguments and making groundless claims and for instituting proceedings primarily for delay. Respondent points out that Mr. Davis's 1997 and 1998 taxable years were previously before the Court in a deficiency case in which we sustained the deficiencies in full and imposed a penalty of $25,000 upon him under section 6673(a)(1) for instituting the case for purposes of delay and for making frivolous arguments. Respondent argues that, despite the imposition of one section 6673(a)(1) penalty against him, Mr. Davis has continued to institute proceedings in this Court for delay and to advance frivolous and groundless arguments therein. Respondent adds, however, that, at the Las Vegas trial session, Mr. Davis testified to certain facts that, if true, might mitigate the penalty the Court saw fit to impose on him; e.g., his reliance on counsel. Nevertheless, respondent believes that, given his history of advancing frivolous or groundless arguments, the Court should impose some penalty upon him.

Each petitioner filed a response to the Court’s order to show cause. Each argues that the standard for imposition of a penalty under section 6673 is bad faith and bad faith does not encompass nonfrivolous arguments. Each catalogs both identical errors in and defenses to the settlement officer’s determination that respondent may proceed with his collection actions; viz, (1) the affirmative defense of statute of limitations, (2) the imposition of double taxation, or “whipsaw”, (3) an innocent spouse claim, (4) the presentation of collection alternatives, including an offer-in-compromise, (5) the settlement officer’s failure to provide requested documents, and (6) the settlement officer’s failure to accord him adequate time to perfect his defense. Each argues that sanctions are not applicable to good faith efforts by taxpayers and their counsel to reach agreement with the IRS. Finally, each appears to argue that, notwithstanding the receipt of a statutory notice of deficiency, a taxpayer is entitled to raise the underlying tax liability in a section 6330 hearing.

B. Discussion

Respondent has not asked us to impose a section 6673(a)(1) penalty on Ms. Davis, in docket Nos. 144-05L and 149-05L, or on the trustee, in docket No. 145-05L, and we shall not. We shall, however, impose penalties on Mr. Davis in docket Nos. 146-05L and 147-05L. We shall do so because we believe that Mr. Davis

instituted and has maintained the proceedings in those cases primarily for delay. We further believe that, in support of that goal, he raised frivolous arguments and relied on groundless positions. We have on more than one occasion during these consolidated proceedings stated our concern that petitioners had raised meritless arguments that served merely to delay the collection of tax. We accorded Mr. Davis both a hearing and the opportunity to respond in writing to our concerns. Neither by his testimony, Ms. Osborn's testimony, nor his written responses to our orders to show cause has Mr. Davis shown us the merit of any averment, claim, or argument advanced by him.[5] In our orders

---

[5] Unsupported by any citation of authority, Mr. Davis claims that the standard for imposition of a penalty under sec. 6673(a)(1) is bad faith. In Takaba v. Commissioner, 119 T.C. 285, 294 n.2 (2002), we observed:

> There is some question whether it is necessary for a court to find that a taxpayer acted in bad faith in order to impose a penalty on him under sec. 6673(a)(1)(B) for putting forth a frivolous or groundless position. Compare Branch v. I.R.S., 846 F.2d 36, 37 (8th Cir. 1988) ("A taxpayer's asserted good faith is not relevant to the assessment of frivolous return [sec. 6702] penalties.") with May v. Commissioner, 752 F.2d 1301, 1306 (8th Cir. 1985) ("showing of willfulness, or lack of good faith, is required [for sec. 6673(a)(1) damages]").

We have not, however, required a showing of bad faith before imposing a sec. 6673(a)(1)(B) penalty, see, e.g., Bean v. Commissioner, T.C. Memo. 2006-88; Holmes v. Commissioner, T.C. Memo. 2006-80; Wetzel v. Commissioner, T.C. Memo. 2005-211, and do not believe that to be a requirement of the statute. Moreover, we believe that the Court of Appeals for the Sixth Circuit, where, barring a stipulation to the contrary, any appeal

(continued...)

granting in part and denying in part respondent’s motions for summary judgment in docket Nos. 146-05L and 147-05L, we addressed each item in the catalog of errors and defenses presented in Mr. Davis’s written responses, and, except with respect to the affirmative defense of the statute of limitations (with respect to which we withheld judgment), we found that he failed to raise any issue that demonstrates error or abuse of discretion on the part of the settlement officer. We incorporate herein by this reference those findings and the analyses supporting them (summarized supra in our background discussion).

With respect to his affirmative defense of the statute of limitations, Mr. Davis presents only the testimony of Ms. Osborn. She testified to nothing more remarkable than that, after an assessment of tax is made, record of that assessment is posted to the IRS’ computerized record system. Ms. Osborn’s theory that assessment predating posting indicates something fraudulent was rejected by the Magistrate Judge in Dahmer v. United States, 90 AFTR 2d at 2002-6809, 2002-2 USTC par. 50,806 at 86,219, in a ruling that accepted the Government’s position that:

> the Dahmers’ evidence that the June 25, 1993[,] assessment was entered into the IRS administrative

[5](...continued) by petitioner would lie, see sec. 7482(b), would agree. See Nelson v. United States, 796 F.2d 164, 166 (6th Cir. 1986) (good faith not a defense to imposition of sec. 6702 penalty for frivolous income tax return).

> computer records in October 1993 provided no evidence of fraud because an assessment occurs on the date an authorized official signs a summary record of assessment containing the taxpayer's assessment rather than the date the assessment is posted to the IRS computerized record system. * * *

Indeed, Mr. Davis neglects even to discuss Ms. Osborn or her "cycle post date" theory in his written responses to our orders to show cause, which suggests to us that he no longer attaches any value to her testimony or theory. See Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001) (concluding that taxpayers abandoned arguments and contentions asserted prior to the filing of their brief where they failed to advance those arguments and contentions on brief). We see no merit in his affirmative defense.

Mr. Davis's inability to show the merit of any averment, claim, or argument advanced by him leads us to the conclusion that he initiated and has maintained these proceedings primarily for delay, and we so find. Indeed, he was sanctioned for just such conduct (and fined $25,000) in the proceeding that he initiated to contest respondent's determination of his underlying tax liabilities for 1997 and 1998. A taxpayer's good faith reliance on the advice of counsel is not a defense to the imposition of a penalty under section 6673(a)(1)(B). See Branch v. IRS, 846 F.2d 36, 37 (8th Cir. 1988). Nor need we excuse a taxpayer's failure to review pleadings and other documents filed on his behalf. The purpose of section 6673 is to compel

taxpayers to think and to conform their conduct to settled principles before they file returns and litigate. Takaba v. Commissioner, 119 T.C. 285, 295 (2002).

Not only do we determine that Mr. Davis is deserving of a penalty for conduct that violates section 6673(a)(1)(A) and (B), but we believe that he is deserving of a penalty pursuant to section 6673(a)(1)(C) for unreasonably failing to pursue available administrative remedies. As summarized in our background discussion under the heading Determinations, Mr. Davis neither requested release nor withdrawal of the NFTL, nor did he show that he was entitled to release or withdrawal of it. Nor did he respond to the settlement officer's request for collection alternatives. Assuming that he had a case to make to the settlement officer, Mr. Davis did not act reasonably in presenting less than his full case to him during the administrative process.

C. Conclusion

Taking into account respondent's position, we shall discharge our orders to show cause in docket Nos. 144-05L and 149-05L, involving Ms. Davis, and 145-05L, involving the trustee, as to why a penalty should not be imposed on the petitioner pursuant to section 6673(a)(1), and we shall make absolute our orders to show cause in docket Nos. 146-05L and 147-05L,

involving Mr. Davis, and impose on him in each docket number a penalty pursuant to section 6673(a)(1) in the amount of $7,500.

III. Section 6673(a)(2) Liability of Counsel for Excessive Costs

A. Positions of the Parties

Respondent's position is that we should impose excess costs on Mr. Jones and Ms. Lacorte pursuant to section 6673(a)(2). Respondent argues that, on behalf of their clients, counsel made only frivolous arguments and advanced only groundless claims, and they did so knowingly or, at least, recklessly. Respondent claims that at no point in these proceedings have they shown the merit of any argument or claim made by them on behalf of petitioners. In particular, respondent focuses on Mr. Jones's perseverance in challenging petitioners' underlying tax liabilities notwithstanding the clear language of section 6330(c)(2)(B) prohibiting such challenges to taxpayers who have received notices of deficiency and the well-defined caselaw interpreting that section. Respondent finds especially egregious Mr. Jones's challenge of Mr. Davis's underlying tax liabilities for 1997 and 1998 in docket No. 146-05L since those liabilities had been finally determined by this Court in a deficiency proceeding. Respondent notes that the motions to amend petitions were filed less than 2 months before the start of the Las Vegas trial session, and the amended petitions contain only additional claims that were all determined to be meritless by the Court.

Respondent implies that counsel filed the motions only to vex respondent. Respondent argues that the lack of citation to relevant legal authorities in the oppositions to the motions for summary judgment signed by both Mr. Jones and Ms. Lacorte indicates their lack of legal research or their willful disregard of adverse authority. Respondent concludes:

> Mr. Jones’ entire conduct in this case constitutes bad faith, in that he knowingly or recklessly filed petitions, motions for leave to amend petitions, amended petitions, and oppositions to respondent’s summary judgment motions that raised nothing but frivolous, groundless, or statutorily precluded arguments. Ms. Lacorte’s involvement was limited to participation in the filing of motions for leave to amend petition and oppositions to respondent’s summary judgment motions.

Respondent claims that he incurred excessive costs of $25,800 in litigating all of these cases and asks payment in that amount.

Alternatively, if we do not impose excess costs on Mr. Jones and Ms. Lacorte under section 6673(a)(2), respondent asks that we sanction both individuals under Rule 33(b), which sets standards in connection with counsel’s signature on a pleading and provides that counsel may be sanctioned for failure to meet those standards.

Mr. Jones and Ms. Lacorte advance as their own defense the arguments made on behalf of each petitioner. They also claim errors in respondent’s calculation of his costs. Mr. Jones states that, at all times relevant to these cases, Ms. Lacorte was his employee, subject to his direction and advice, and is in

no way responsible for the decisions made in connection with the initiation or prosecution of these cases. Ms. Lacorte agrees with that description of her relationship to Mr. Jones.

B. Discussion

1. Introduction

We accept that Mr. Jones is principally responsible for the decisions of counsel made in these cases, and Ms. Lacorte, his employee, at all times worked under his direction and control. We shall hold only Mr. Jones financially responsible for the excessive costs we determine.

2. Requirements for an Award of Excess Costs

Section 6673(a)(2) plainly imposes three prerequisites to an award of excess costs. First, the attorney or other practitioner (without distinction, attorney) must engage in “unreasonable and vexatious” conduct. Second, that “unreasonable and vexatious” conduct must be conduct that “multiplies the proceedings.” Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings; i.e., the sanction may not exceed the “costs, expenses, and attorney’s fees reasonably incurred because of such conduct.” See Amlong & Amlong, P.A. v. Denny's, Inc., 457 F.3d 1180, 1190 (11th Cir. 2006) (with reference to the analogous language of 28 U.S.C. sec. 1927).

3. Unreasonable and Vexatious Conduct

The purpose of section 6673(a)(2) is to penalize an attorney for his misconduct in unreasonably and vexatiously multiplying the proceedings. Congress has not, however, specified the degree of culpability that an attorney must exhibit before we may conclude that his conduct in multiplying the proceedings is unreasonable and vexatious. See, e.g., Takaba v. Commissioner, 119 T.C. at 296-298 (2002). The language of section 6673(a)(2) is substantially identical to that of 28 U.S.C. sec. 1927 (the two provisions serving the same purpose in different forums), and we have relied on caselaw under the latter to ascertain the degree of culpability necessary to make an award under the former. Takaba v. Commissioner, supra at 296-297. While most of the United States Courts of Appeals have required a showing of bad faith before awarding costs under 28 U.S.C. sec. 1927, a few have required only a showing of recklessness, a lesser degree of culpability. Id. at 297. Among those few are both the Court of Appeals for the District of Columbia Circuit, see Reliance Ins. Co. v. Sweeney Corp., 792 F.2d 1137, 1138 (D.C. Cir. 1986), and the Court of Appeals for the Sixth Circuit, see Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, 465 F.3d 642, 646 (6th Cir. 2006). The venue for appeal of any award of costs imposed on Mr. Jones may be the Court of Appeals for the District of Columbia Circuit. See sec. 7482(b)(1) (second sentence);

Takaba v. Commissioner, supra. If not, it may be the Court of Appeals for the Sixth Circuit. See sec. 7482(b)(1)(A). The Court of Appeals for the Sixth Circuit has recently expressed the standard for awarding costs under 28 U.S.C. sec. 1927 as follows: "[A]n attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings." Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, supra at 646. In support of that standard, the Court of Appeals cites United States v. Wallace, 964 F.2d 1214, 1220 (D.C. Cir. 1992), a case of the Court of Appeals for the District of Columbia Circuit. Id. Because we are uncertain of appellate venue, and because we find that Mr. Jones's conduct would be culpable under the standard expressed by the Court of Appeals for the Sixth Circuit (and presumably shared by the Court of Appeals for the District of Columbia Circuit), we shall, for purposes of this case (and without deciding the standard in this Court), adopt that standard. See Takaba v. Commissioner, supra at 297-298.

We believe that Mr. Jones intentionally abused the judicial process by bringing and continuing these cases on behalf of petitioners knowing their claims to be without merit. In support of our determination to impose a section 6673(a)(1) penalty on Mr. Davis, we found that he initiated and maintained these proceedings primarily for delay and, in support of that goal,

raised frivolous arguments and relied on groundless positions. Although we decline to impose a section 6673(a)(1) penalty on the other petitioners, given the almost cookie-cutter similarity of the claims made by each of them, we could (and do) make the same finding and reach the same conclusion with respect to each of them. None of the petitioners presents any meritorious claims. Moreover, we have no doubt that Mr. Jones has known all along that petitioners' claims lack merit. We have no doubt because of Mr. Jones's candor in responding to the orders to show cause. In those responses, Mr. Jones admits that, while, on average, the cases he brings have merit, some do not:

> The Orders to Show cannot be properly answered in the context of analysis of individual issues raised on appeal from CDP [sec. 6330] hearings. This is true because there are some "L" [sec. 6330] case docket numbers which standing alone do not have appealable issue[s]. However, in conjunction with other related "L" case docket numbers, and sometimes statutory notice of deficiency docket numbers[, they] have sufficient appealable issues, and "hazards of litigation" which justify settlement of all docket numbers before the Court[,] as agreed upon by petitioners, their counsel, and the IRS Office of Chief Counsel acting on behalf of respondent.

The five amended petitions before us today raise substantially the same issues. If Mr. Jones believed that those issues were "appealable issues", by which term we assume that he means meritorious issues, then there would be no reason for him to make his probabilistic argument; i.e., while some of my cases have no merit, some do, so that, <u>on average</u>, all of my cases have merit,

and each is entitled to a portion of some wholesale settlement. That Mr. Jones does indeed take a wholesale approach to representing clients before this Court is supported by his request that we take notice that, during the three trial sessions of the Tax Court in Las Vegas, Nevada, between December 2004 and February 2006, Mr. Jones and his clients settled 67 cases, agreeing to make payments of $2,564,788 with respect to $11,067,835 of claimed liabilities.[6]

The difficulty with Mr. Jones's wholesale approach, and the reason we believe that he intentionally abused the judicial process, is that, in taking that approach, Mr. Jones violated the well-known duty of an attorney before this Court to insure that there is merit to every case that he brings before the Court. That duty is imposed on Mr. Jones both by our Rules and by the ABA Model Rules of Professional Conduct (Model Rules), which, by Rule 201(a), govern his practice before this Court.[7]

---

[6] That Mr. Jones takes a wholesale approach in representing clients before the Court is also evidenced by the fact that he made the same probabilistic argument in Gillespie v. Commissioner, T.C. Memo. 2007-202.

[7] As discussed in the text, supra, the Court of Appeals for the Sixth Circuit requires only a showing of recklessness (not a showing of subjective bad faith) before assessing monetary sanctions under 28 U.S.C. sec. 1927. Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, 465 F.3d 642, 646 (6th Cir. 2006). If Mr. Jones were to claim a lack of familiarity with our rules of practice and the ABA Model Rules of Professional Conduct, we would conclude that he acted recklessly in representing petitioners before the Court in ignorance of

(continued...)

In pertinent part, Rule 33(b) provides:

> (b) Effect of Signature: The signature of counsel * * * constitutes a certificate by the signer that the signer has read the pleading; that, to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading is signed in violation of this Rule, the Court, upon motion or upon its own initiative, may impose upon the person who signed it * * * an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable counsel’s fees.

The effect of a signature on a motion is the same as the effect of a signature on a pleading. Rule 50(a).

In pertinent part, Model Rules 3.1 states: “A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.”

Mr. Jones has signed pleadings and other papers to bring and defend these proceedings knowing petitioners’ claims to be meritless.[8] He has done so in violation of our rules and the

---

[7](...continued) applicable rules.

[8] The pleadings and papers we have in mind are the petitions, motions for leave to amend petition, amended petitions, and objections to the motions for summary judgment.

Model Rules and, thus, has intentionally abused the judicial process. If by that conduct he has multiplied the proceedings, he is deserving of sanctions for unreasonably and vexatiously multiplying the proceedings within the meaning of section 6673(a)(2). See Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, supra.

4. Multiplication of the Proceedings

These proceedings should never have been brought. All of respondent's costs are, thus, in a sense, excessive. There is, however, some disagreement among the Courts of Appeals in interpreting 28 U.S.C. sec. 1927 as to whether it is only possible to multiply, or prolong, the proceedings after a case has been initiated; presumably because an attorney cannot begin to multiply the proceedings until some proceeding has come into existence for the attorney to multiply. Compare Moore v. Keegan Mgmt. Co., 78 F.3d 431, 435 (9th Cir. 1996) (28 U.S.C. sec. 1927 "applies only to unnecessary filings and tactics once a lawsuit has begun"), with In re TCI Ltd., 769 F.2d 441, 448 (7th Cir. 1985) (under 28 U.S.C. sec. 1927, trial judge "had the authority to award the fees incurred right from the beginning"). We have not addressed the analogous issue under section 6673(a)(2), and we are not compelled to do so today since, with respect to respondent's costs incurred in responding to the first pleadings (i.e., answering the petitions), there is adequate basis under

Rule 33(b) for imposing upon Mr. Jones respondent's reasonable expenses, including reasonable counsel's fees, incurred in answering those pleadings.

The text of Rule 33(b) is set forth supra. By signing a pleading, the signer certifies, among other things, that, after a reasonable inquiry, he has concluded that, to the best of his knowledge, the pleading is well grounded in fact and law. The signer must inquire into both the facts and the law at the time the pleading is filed. Versteeg v. Commissioner, 91 T.C. 339, 342 (1988). Mr. Jones does not argue that he made a reasonable inquiry that led to his erroneous conclusion that petitioners' claims had merit. Indeed, we have concluded that he signed the petitions knowing that they lacked merit. Mr. Jones signed the petitions in violation of Rule 33(b) and is deserving of a sanction on account thereof.

5. Excess Costs

Attorney's fees awarded under section 6673(a)(2) are to be computed by multiplying the number of excess hours reasonably expended on the litigation by a reasonable hourly rate. Takaba v. Commissioner, 119 T.C. at 303. The product is known as the "lodestar" amount. Id. To assist us in computing the lodestar amount, respondent has provided us with the declarations of attorneys Alan J. Tomsic and Paul C. Feinberg (Messrs. Tomsic and Feinberg, respectively, and the Tomsic and Feinberg declarations,

respectively). Attached to the Tomsic declaration are copies of reports generated from respondent's internal time keeping records showing the number of hours expended on these cases by Mr. Tomsic. Although the Feinberg declaration includes the number of hours he expended on these cases, he does not provide reports similar to those provided by Mr. Tomsic, declaring that he does not keep detailed records by individual case number for time he spends in a supervisory capacity. Mr. Tomsic, explicitly, and Mr. Feinberg, by inference, calculate their time expended working on these cases from their first contacts with the cases; i.e., for Mr. Tomsic, from review of the case files leading to his drafting answers.

Respondent asks to be reimbursed for 152 hours of Mr. Tomsic's time, at $150 an hour, and for 30 hours of Mr. Feinberg's time, at $200 an hour. Respondent provides the following chart showing the allocations of hours and dollars among docket numbers.

| | 144-05L | 145-05L | 146-05L | 147-05L | 149-05L | Total |
|---|---|---|---|---|---|---|
| Hours–Alan J. Tomsic | 30 | 20 | 48 | 24 | 30 | 152 |
| "Lodestar" amount at $150/hour (Tomsic) | $4,500 | $3,000 | $7,200 | $3,600 | $4,500 | $22,800 |
| Hours–Paul C. Feinberg | 3 | 2 | 5 | 2 | 3 | 15 |
| "Lodestar" amount at $200/hour (Feinberg) | $600 | $400 | $1,000 | $400 | $600 | $3,000 |
| "Lodestar" amount (Total) | $5,100 | $3,400 | $8,200 | $4,000 | $5,100 | $25,800 |

Mr. Tomsic is the attorney with day-to-day responsibility for these cases. He is an attorney employed in the IRS Office of Chief Counsel in Las Vegas, Nevada. He has been a member of one or more State bars since 1981. He is admitted to practice before the United States Tax Court. His declaration contains the following chart showing the hours he spent on these cases.

| | 144-05L | 145-05L | 146-05L | 147-05L | 149-05L | Total |
|---|---|---|---|---|---|---|
| Review case files and answer petition | 3 | 3 | 3 | 3 | 3 | 15 |
| Request information and perform research | 5 | 1 | 1 | 2 | 1 | 10 |
| Objections to motions for leave to amend | 2 | 2 | 2 | 2 | 2 | 10 |
| Motions for summary judgment | 6 | 5 | 20 | 4 | 15 | 50 |
| Answer amended petitions | 2 | 2 | 2 | 2 | 2 | 10 |
| Review info and prepare settlement documents | 4 | -- | 12 | 4 | -- | 20 |
| Prepare for and attend Las Vegas trial session | 8 | 7 | 8 | 7 | 7 | 37 |
| Total | 30 | 20 | 48 | 24 | 30 | 152 |

Mr. Feinberg is an Associate Area Counsel in the IRS Office of Chief Counsel in Las Vegas, Nevada. He has been in that position since September 2002 and has been employed by the Chief Counsel since July 1991. He has been a member of one or more State bars since 1979. He is admitted to practice before the United States Tax Court. His responsibilities include, among other things, supervising the litigation of cases before the

Court. In connection with these cases, he supervised the activities of Mr. Tomsic, and, as supervisor, he familiarized himself with the cases, discussed handling of the cases and issues presented, reviewed all documents that were prepared for filing with the Court, and attended all proceedings concerning the cases at the Las Vegas trial session. He estimates that he spent a total of 15 hours on these cases.

Respondent claims that it is reasonable to utilize hourly charges of $150 and $200 for Messrs. Tomsic's and Feinberg's time, respectively, in computing the lodestar amounts for these cases. Respondent argues that those are the same rates that were allowed by the Court for the Commissioner's trial and supervisory attorneys in 2002, in Takaba v. Commissioner, 119 T.C. at 304-305 (2002).

Mr. Jones does not question the reasonableness of the hourly rates claimed for either Mr. Tomsic or Mr. Feinberg. Mr. Jones has principally two objections to the award of excess costs. First, he objects to respondent's claim that all of the hours expended by his attorneys are excessive and deserving of compensation. Second, he claims that respondent fails to describe and substantiate the nature of the services rendered by his attorneys.

We see no merit to either of Mr. Jones's objections. As we have made plain, these cases are without merit and never should

have been brought. By their declarations, Messrs. Tomsic and Feinberg describe adequately their activities with respect to these cases. Mr. Tomsic’s declaration is accompanied by computer records that, we assume, were made contemporaneously with the work performed, and that support his claim. Moreover, we are familiar with the procedural and factual history of these cases, and we believe that 152 hours was reasonably necessary for Mr. Tomsic to do the work he describes. We find that $150 is a reasonable hourly charge for Mr. Tomsic’s time, and he reasonably expended 152 hours on this litigation. The lodestar amount for Mr. Tomsic is, thus, $22,800. We accept at face Mr. Feinberg’s descriptions of his duty and activities and find reasonable his claim that he spent 15 hours in those activities. We find that $200 is a reasonable hourly charge for Mr. Feinberg’s time, and he reasonably expended 15 hours on this litigation. The lodestar amount for Mr. Feinberg is, thus, $3,000.

The total lodestar amount for the time of Messrs. Tomsic and Feinberg is $25,800. Respondent has not itemized costs for travel expense, photocopying, or supplies used in preparing the cases. Respondent limits his request for costs to the total lodestar amount. We shall require Mr. Jones to pay costs in that amount.

C. Conclusion

We find that $25,800 is a reasonable amount for respondent's excess attorney's fees incurred by reason of Mr. Jones's unreasonable and vexatious multiplication of these proceedings. Therefore, we shall make the orders to show cause absolute and order Mr. Jones personally to pay $5,100, $3,400, $8,200, $4,000, and $5,100 in docket Nos. 144-05L, 145-05L, 146-05L, 147-05L, and 149-05L, respectively, pursuant to section 6673(a)(2).[9]

IV. Conclusion

To reflect the foregoing,

An appropriate order will be issued, and an order and decision will be entered in each docket.

.

---

[9] Alternatively, with respect to respondent's attorney's fees allocated to reviewing case files and answering petition, we make the award pursuant to Rule 33(b), as discussed supra.