T.C. Memo. 2007-202

UNITED STATES TAX COURT

ROBERT AND INES M. GILLESPIE, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 3405-05L, 3489-05L, 3490-05L. Filed July 24, 2007.

These cases brought pursuant to sec. 6330, I.R.C., are before the Court to determine whether Ps must pay penalties pursuant to sec. 6673(a)(1), I.R.C., for instituting procedures primarily for delay, etc., and whether counsel must pay R's excess counsel fees pursuant to sec. 6673(a)(2), I.R.C., for unreasonably and vexatiously multiplying the proceedings.

1. Held: Ps penalized pursuant to sec. 6673(a)(1), I.R.C., for instituting and maintaining proceedings primarily for delay, making frivolous arguments and taking groundless positions, and unreasonably failing to pursue available administrative remedies.

---

[1] Cases of the following petitioners are consolidated herewith: Robert E. Gillespie Asset Management Trust, Robert E. Gillespie, Trustee, docket No. 3489-05L; and Robert E. & Ines M. Gillespie, docket No. 3490-05L.

GOVERNMENT'S EXHIBIT 'B"

2. Held, further, Ps' lead counsel liable for R's attorney's fees since he signed pleadings and other papers knowing Ps' claims to be meritless and, thus, abused the judicial process and unreasonably and vexatiously multiplied the proceedings.

Robert Alan Jones, Maria Angelisa L. Lacorte, and Mario P. Fenu, for petitioners.

Wesley J. Wong and Paul C. Feinberg, for respondent.

MEMORANDUM OPINION

HALPERN, Judge: The cases in this consolidated proceeding are before the Court to determine whether petitioners must pay penalties pursuant to section 6673(a)(1) and whether two of petitioners' counsel common to all of the cases, Robert Alan Jones (Mr. Jones) and Maria Angelisa L. Lacorte (Ms. Lacorte), must pay certain of respondent's costs pursuant to section 6673(a)(2). For the reasons that follow, we impose on petitioners penalties totaling $15,000 and on Mr. Jones costs totaling $12,798.

Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

For convenience, we shall use the term "petitioners" to refer to all of the petitioners, collectively, and also to refer to the petitioners or the petitioner in each of the cases before

us (notwithstanding that, in docket No. 3489-05L, there is only one petitioner). Generally, we shall use the term "counsel" to refer to Mr. Jones and Ms. Lacorte.

Background

Introduction

All of these cases began with a petition for review of a determination by respondent's Appeals Office (Appeals) that respondent might proceed with certain activities to collect unpaid tax (or taxes) owed by petitioners. The docket numbers, petitioners, and years in issue are as follows:

| Docket No. | Petitioner | Year(s) |
|---|---|---|
| 3405-05L | Robert & Ines M. Gillespie | 1996, 1997, 1998 |
| 3489-05L | Robert E. Gillespie Asset Management Trust, Robert E. Gillespie, Trustee | 1996, 1997, 1998, 1999 |
| 3490-05L | Robert E. & Ines M. Gillespie | 1999 |

At the time the petitions were filed, all of the petitioners resided in Wabash, Indiana.

The parties to each case have entered into a stipulation of settled issues agreeing, among other things, that Appeals' determination that respondent might proceed with the collection activities in question in that case should be sustained. The only issues remaining for our decision are the penalties and costs mentioned above. Following the call of these cases from the calendar for the trial session of the Court at Las Vegas, Nevada, commencing on February 27, 2006 (the Las Vegas trial

session), we ordered petitioners in each case to show cause in writing why a penalty should not be imposed on them pursuant to section 6673(a)(1), and we ordered Mr. Jones and Ms. Lacorte to show cause why in each case excess costs should not be imposed on them pursuant to section 6673(a)(2). We also ordered respondent to inform the Court of his (1) fees and costs incurred in these cases and (2) positions with respect to the penalties and costs at issue. We explained to the parties and to counsel that our orders to show cause were motivated by our concern that petitioners had raised, and counsel had abetted them in raising, meritless arguments that had served merely to delay the collection of taxes owing. In addition to ordering petitioners and counsel to respond in writing to our orders to show cause, we accorded each the opportunity to appear and be heard.

Tax Liabilities

On April 13, 2001, respondent issued to petitioners Robert and Ines M. Gillespie (the Gillespies) a notice of deficiency with respect to their joint 1996 through 1998 Federal income taxes, and, on May 9, 2003, respondent issued to them a notice of deficiency with respect to their 1999 Federal income tax. On April 13, 2001, respondent issued to petitioner Robert E. Gillespie Asset Management Trust, Robert E. Gillespie, trustee (the trust and the trustee, respectively), a notice of deficiency with respect to the trust’s 1996 through 1998 Federal income

taxes, and, on May 9, 2001, respondent issued to the trustee a notice of deficiency with respect to the trust's 1999 Federal income tax. No petitions were filed in this Court in response to any of those notices of deficiency, and respondent properly assessed the deficiencies determined in each case.

Notices

On March 22, 2004, respondent sent to the Gillespies with respect to their 1999 tax year a Final Notice – Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice). On March 29, respondent sent to the trustee with respect to the trust's 1996 through 1999 tax years a final notice.

On April 9, 2004, respondent sent to the Gillespies with respect to their 1996 through 1999 tax years a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 (NFTL). On that same date, respondent sent to the trustee with respect to the trust's 1996 through 1999 tax years an NFTL.

Responses and Hearing

On April 27, 2004, in response to the final notice they had received, the Gillespies filed with Appeals an Internal Revenue Service (IRS) Form 12153, Request for a Collection Due Process Hearing. On the Form 12153, the Gillespies stated their disagreement with the final notice as follows: "We disagree with the determination of the taxes and additions owed, and the calculations of the amounts due, if any." On May 13, 2004, in

response to the two NFTLs they had received, the Gillespies filed with Appeals a second Form 12153. They stated their disagreement with the NFTLs in the same terms they had used to disagree with the final notice. On April 27, 2004, in response to both the final notice and the NFTL he had received, the trustee filed with Appeals a Form 12153. He stated his disagreement with the final notice and the NFTL in the same terms the Gillespies had used. Mr. Jones signed all of the Forms 12153 as petitioners' authorized representative.

On August 24 and 26, 2004, in response to the Forms 12153, an Appeals employee, Settlement Officer Catherine H. Watkins (the settlement officer), sent Mr. Jones similar letters scheduling hearings to be held on September 22, 2004, by telephone. In her letters, the settlement officer stated that, at the hearing, petitioners could discuss, among other things, collection alternatives. She instructed Mr. Jones that, for her to consider collection alternatives, including an offer-in-compromise, petitioners would have to (1) file returns for 2001, 2002, 2003, and, for the trust, 2000, which IRS records indicated had not been filed, and present her with signed copies, and (2) provide her with completed collection information statements. She enclosed the required forms and asked Mr. Jones to send her the items within 14 days of the date of the letter.

On September 21, 2004, Victoria Osborn (Ms. Osborn) faxed two similar letters from Mr. Jones's office to the settlement officer: "[T]o provide you with the information the taxpayer wants considered regarding the proposed collection action." In pertinent part, the letters state that (1) the assessments of taxes for 1996 and 1997 were untimely and (2) petitioners are considering collection alternatives for 1998 and 1999 but require additional documentation. The letters ask for a copy of the "Administrative/Examination File for 1999", the "ICS History", and the statutory notice of deficiency and proof of its mailing.

On September 22, 2004, at the time scheduled for the hearing, the settlement officer telephoned petitioners' counsel's office. Someone in the office conveyed a message to her from petitioners' counsel that the correspondence received on the previous day was to serve as the hearing.

Determinations

On January 14, 2005, Appeals issued a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330" (notice) with respect to each of the Forms 12153. The notices sustain the filing of all of the liens and all of the proposed levy actions. Each notice is accompanied by an attachment, wherein the settlement officer sets forth the analysis leading to her conclusion that the collection actions should be sustained. The analysis in each attachment is similar,

and the following are among the facts, generally similar in each attachment, on which the settlement officer relied: She had no prior involvement with the taxes at issue; she had furnished petitioners with copies of IRS Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, which explain and document the tax assessments for the years in issue; petitioners had not presented any acceptable collection alternatives, any financial information in order to consider collection alternatives, and had not filed all required tax returns; the proposed collection action balances the need for efficient collection with petitioners' concern that any collection action be no more intrusive than necessary; and applicable laws and administrative procedures were met. She discusses in detail why the assessments of tax for 1996 and 1997 were timely. She also warns petitioners that they "should be advised that unfounded allegations of procedural defects may be construed as frivolous Collection Due Process appeals and may be subject to monetary sanctions by the Tax Court under IRC Section 6673(a)(1)."

Petitions

On February 22, 2005, petitioners timely petitioned for review of the notices. Each petition assigns error in substantially the same terms. Except as noted, each (1) seeks to challenge the tax liability underlying the collection actions at

issue; (2) submits that there are impermissible “whipsaws” with related entities or persons; (3) submits that the settlement officer did not make a determination from petitioners’ tax returns; (4) claims the settlement officer did not allow them to raise collection alternatives, including an offer-in-compromise; (5) claims the settlement officer did not allow sufficient time for them to retrieve IRS documentation “from their IMF transcripts-specific”; (6) alleges that the notice does not comply with administrative rules, regulations, and statutes because it contains no facts, does not contain a certificate of compliance by the settlement officer, and is not signed or attested to by the settlement officer; (7) in docket No. 3489-05L, alleges that the period of limitations expired for the 1996 and 1997 tax years; and (8) in docket Nos. 3405-05L and 3490-05L, claims “innocent spouse protection” for Mrs. Gillespie. Mr. Jones executed each petition on behalf of the named petitioner. Respondent answered the petitions, denying or otherwise countering those claims.

The petitions are substantially similar to petitions filed by Mr. Jones on behalf of taxpayers in at least eight other cases, six of them calendared for trial at the Las Vegas trial session. Five of those cases are the subject of our report in Davis v. Commissioner, released today as T.C. Memo. 2007-201.

Ms. Lacorte’s Appearance

On November 15, 2005, Ms. Lacorte filed an entry of appearance in each case.

Amended Petitions

On December 16, 2005, approximately 2-1/2 months before commencement of the Las Vegas trial session, petitioners all moved for leave to amend petition. Those motions are signed by Mr. Jones and Ms. Lacorte. The accompanying amended petitions were lodged with the Court on the same date, and, on December 19, 2005, we ordered respondent to respond to the motions for leave to amend. On January 17, 2006, respondent informed the Court that he had no objection to our granting the motions. On January 19, 2006, we granted all of the motions, and we filed the amended petitions. Mr. Jones executed each amended petition on behalf of the named petitioners.

In each amended petition, petitioners aver numerous instances of abuse of discretion by the settlement officer; viz, (1) She did not give petitioners adequate time to make their case, including raising collection alternatives, such as an offer-in-compromise; (2) she failed to provide petitioners a copy of their individual master file and other relevant documentation; (3) the period of limitations had expired for the 1996 and 1997 tax years; (4) the settlement officer was biased against petitioners because of their use of the trust system; (5) there

are impermissible "[whipsaws]" with related entities or individuals; and (6) in docket Nos. 3405-05L and 3490-05L, Mrs. Gillespie is entitled to "innocent spouse protection". In each case, respondent denied those averments.

The amended petitions are substantially similar to petitions filed by Mr. Jones on behalf of taxpayers in at least six other cases calendared for trial at the Las Vegas trial session. Five of those cases are the subject of our report in Davis v. Commissioner, supra.

Motions for Summary Judgment

On January 17, 2006, respondent moved for summary judgment in each of the cases. Respondent relied on similar grounds in support of each motion: Since petitioners had received a notice of deficiency with respect to the underlying liability or liabilities (without distinction, liability), they could not challenge the liability. The settlement officer did not abuse her discretion in not considering collection alternatives since petitioners had not presented any collection alternatives. Indeed, the settlement officer was precluded from considering collection alternatives since petitioners had failed to satisfy the necessary prerequisites for such consideration; i.e., they had neither provided the settlement officer the requisite collection information nor had they filed their delinquent tax returns. The settlement officer had accorded petitioners

adequate time to participate in and complete a proper hearing. Petitioners’ claim that they did not have sufficient time to retrieve IRS documentation fails to raise any relevant issue. A settlement officer is not required to produce any documents at a section 6330 hearing. Petitioner Ines M. Gillespie had failed in docket Nos. 3405-05L and 3490-05L to raise an innocent spouse claim either on the Form 12153 or at any time during the administrative process, and, for that reason, she could not raise that claim in these proceedings. There is no merit to petitioners’ claim that any assessment is untimely. Petitioners’ claim that the settlement officer was biased against them because of their use of the trust system is frivolous and unsubstantiated. No other error assigned by petitioners raises any justiciable issue or shows any abuse of discretion by the settlement officer.

Petitioners’ Objections

On February 6, 2006, petitioners all filed objections to the motions for summary judgment. None of petitioners disputed that they failed to present collection alternatives. In each case, they argued that the settlement officer had not given them adequate time to make their case and they had required additional information to prepare collection alternatives and to resolve other issues relating to the years at issue. In docket No. 3405-05L, petitioners argued that the assessment of tax for 1997 was

backdated. Mr. Jones and Ms. Lacorte signed all of the objections.

Orders Disposing of Motions for Summary Judgment and Motion for Penalty

On February 15, 2006, we issued orders granting in full the motions for summary judgment in docket Nos. 3489-05L and 3490-05L and granting in part the motion for summary judgment in docket No. 3405-05L. In substantial part, the orders are similar. In each, we concluded that petitioners were prohibited from challenging the underlying liability. We concluded that the settlement officer did not abuse her discretion in failing to consider collections alternatives since, although given adequate time to do so, petitioners had failed to present collection alternatives or provide the collection information and delinquent returns that are a prerequisite to Appeals' consideration of collection alternatives. We rejected petitioners' claim that the settlement officer was required to provide them copies of their individual master file and other documents. We cited the following authority specifically holding that an Appeals officer is not required to produce that type of information. Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002); Lunsford v. Commissioner, 117 T.C. 183, 187-188 (2001); Carrillo v. Commissioner, T.C. Memo. 2005-290. We found petitioners' claim of bias to be frivolous and unsubstantiated. In docket Nos. 3489-05L and 3490-05L, we rejected petitioners' affirmative

defenses of the statute of limitations because, in the first case, we deemed petitioners to have conceded that defense by not addressing it in their objection to respondent’s motion for summary judgment and, in the second case, the claim did not deal with the year at issue in the case. In docket No. 3405-05L, we rejected a similar claim with respect to 1996 because we deemed petitioners likewise to have conceded the claim. We did, however, deny in part respondent’s motion for summary judgment in docket No. 3405-05L because of petitioners’ statute of limitations claim for 1997. Petitioners claimed that respondent had backdated the assessment of tax for that year, and as a result, collection of the tax was time barred. Petitioners supported their claim of backdating by an argument concerning the “cycle post date” of the assessment. Since that argument was unclear, but we were concerned that it might involve a material issue of fact, we declined to adjudicate summarily petitioners’ statute of limitations claim for 1997.

In each of the orders we issued in response to the motions for summary judgment, we warned petitioners and counsel that we were considering the imposition of penalties on petitioners pursuant to section 6673(a)(1) and excess costs on counsel pursuant to section 6673(a)(2). In those orders, we stated our impressions that petitioners, aided by counsel, may have (1) instituted and maintained the proceeding before this Court

primarily to delay the collection of their income tax liability, (2) in support of that goal, raised frivolous arguments and relied on groundless claims, and (3) unreasonably failed to pursue their opportunity for a section 6330 hearing. We cataloged our concerns with respect to petitioners generally as follows: They had not challenged respondent's statements in support of the motion for summary judgment that petitioners received a notice of deficiency and failed to petition the Tax Court; they had failed to present the settlement officer any collection alternatives or the financial information necessary to consider collection alternatives; and, in the amended petition, they had made claims that had little or no substance, all but one of which (in docket No. 3405-05L) we had rejected. We also noted the similarity of the amended petitions to petitions filed by counsel in other cases calendared for trial at the Las Vegas trial session and the shortness of the period between filing those amended petitions and the start of the trial session. We expressed our skepticism with respect to the "cycle post date" argument made in support of the statute of limitations defense in docket No. 3405-05L, stating our suspicion, based on the rejection of the same or a similar argument in Dahmer v. United States, 90 AFTR 2d 2002-6804, 2002-2 USTC par. 50,806 (W.D. Mo. 2002) (Magistrate Judge's order), that the argument was frivolous. In docket Nos. 3489-05L and 3490-05L, the cases in

which we granted respondent's motions for summary judgment in full, we ordered petitioners and counsel to appear and be prepared to show cause during the Las Vegas trial session why a penalty and excess costs should not be imposed on them, respectively. In docket No. 3405-05L, we left the penalty and cost issues for later resolution.

The Las Vegas Trial Session

At the call of these cases from the calendar for the Las Vegas trial session, the parties to each case informed the Court that they had agreed to a settlement sustaining Appeals' determination that respondent may proceed with the collection activities in question. In anticipation of receiving written agreements so stipulating, the Court stated that, following receipt of those agreements, the Court would vacate our orders granting in whole or in part the motions for summary judgment. We have received those agreements, and we have vacated those orders. At the Las Vegas trial session, we accorded each petitioner and counsel the opportunity to appear and be heard with respect to our orders to show cause why we should not impose on petitioners a penalty pursuant to section 6673(a)(1) and impose on counsel excess costs pursuant to section 6673(a)(2).

None of the petitioners appeared. Petitioner Robert E. Gillespie submitted his declaration stating in salient part that he was 80 years old and too ill to travel. The parties agreed to

the following stipulation: Ms. Osborn is a forensic accountant; she is not recognized as an enrolled agent before the IRS, she reviewed petitioners' records and advised counsel for petitioners that the assessments were time barred.

Both Mr. Jones and Ms. Lacorte were accorded the opportunity to be heard with respect to our orders to show cause why excess costs should not be imposed on them pursuant to section 6673(a)(2), but each preferred to respond to our orders in writing.

## Discussion

### I. Introduction

Section 6673(a) provides for the imposition of sanctions and the award of costs in Tax Court proceedings. In pertinent part, the provision provides:

> SEC. 6673. SANCTIONS AND COSTS AWARDED BY COURTS.
>
> (a) Tax Court Proceedings.--
>
> (1) Procedures instituted primarily for delay, etc.––Whenever it appears to the Tax Court that--
>
> (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay,
>
> (B) the taxpayer's position in such proceeding is frivolous or groundless, or
>
> (C) the taxpayer unreasonably failed to pursue available administrative remedies,

the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $25,000.

(2) Counsel's liability for excessive costs.–-Whenever it appears to the Tax Court that any attorney or other person admitted to practice before the Tax Court has multiplied the proceedings in any case unreasonably and vexatiously, the Tax Court may require--

(A) that such attorney or other person pay personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct * * *

II. Section 6673(a)(1) Liability of Petitioners

A. Positions of the Parties

Respondent's position is that we should impose a penalty upon petitioners for advancing frivolous arguments and making groundless claims and for instituting proceedings primarily for delay. Respondent acknowledges petitioner Robert E. Gillespie's declaration that he was too ill to travel; nevertheless, argues respondent, neither the declaration nor any other evidence establishes any reasons why sanctions should not be imposed, and there are no mitigating factors in the record. Respondent does point out that Mr. Jones and Ms. Lacorte represented several unrelated taxpayers in unrelated cases on the Las Vegas trial calendar and, in those unrelated cases, Mr. Jones and Ms. Lacorte made arguments similar to the frivolous arguments and groundless claims advanced in these cases. Respondent states: "The conduct of Mr. Jones and Ms. Lacorte in these other unrelated cases may

suggest that petitioners relied heavily on the advice of their counsel and may not have known about the nature of the legal arguments advanced by counsel."

Petitioners filed responses to the Court's orders to show cause. They all argue that the standard for imposition of a penalty under section 6673 is bad faith, and bad faith does not encompass nonfrivolous arguments. They catalog both identical errors in, and defenses to, the settlement officer's determination that respondent may proceed with his collection actions; viz, (1) the affirmative defense of statute of limitations, (2) the imposition of double taxation, or "whipsaw", (3) an innocent spouse claim, (4) the presentation of collection alternatives, including an offer-in-compromise, (5) the settlement officer's failure to provide requested documents, and (6) the settlement officer's failure to accord them adequate time to perfect their defense. They argue that sanctions are not applicable to good faith efforts by taxpayers and their counsel to reach agreement with the IRS. Finally, they appear to argue that, notwithstanding the receipt of a statutory notice of deficiency, a taxpayer is entitled to raise the underlying tax liability in a section 6330 hearing.

B. Discussion

We shall impose section 6673(a)(1) penalties on petitioners in each case before us. We shall do so because we believe that

petitioners instituted and have maintained the proceedings in those cases primarily for delay. We further believe that, in support of that goal, in each case, they raised frivolous arguments and relied on groundless positions. We have on more than one occasion during these proceedings stated our concern that petitioners had raised meritless arguments that served merely to delay the collection of tax. We accorded petitioners both a hearing and the opportunity to respond in writing to our concerns. Neither by petitioner Robert E. Gillespie's declaration nor by petitioners' written responses to our orders to show cause have petitioners shown us the merit of any averment, claim, or argument advanced by them.[2] In our orders

---

[2] Unsupported by any citation of authority, petitioners claim that the standard for imposition of a penalty under sec. 6673(a)(1) is bad faith. In Takaba v. Commissioner, 119 T.C. 285, 294 n.2 (2002), we observed:

> There is some question whether it is necessary for a court to find that a taxpayer acted in bad faith in order to impose a penalty on him under sec. 6673(a)(1)(B) for putting forth a frivolous or groundless position. Compare Branch v. I.R.S., 846 F.2d 36, 37 (8th Cir. 1988) ("A taxpayer's asserted good faith is not relevant to the assessment of frivolous return [sec. 6702] penalties.") with May v. Commissioner, 752 F.2d 1301, 1306 (8th Cir. 1985) ("showing of willfulness, or lack of good faith, is required [for sec. 6673(a)(1) damages]").

We have not, however, required a showing of bad faith before imposing a sec. 6673(a)(1)(B) penalty, see, e.g., Bean v. Commissioner, T.C. Memo. 2006-88; Holmes v. Commissioner, T.C. Memo. 2006-80; Wetzel v. Commissioner, T.C. Memo. 2005-211, and do not believe that to be a requirement of the statute.

(continued...)

disposing of the motions for summary judgment, we addressed each item in the catalog of errors and defenses presented in petitioners' written responses, and, except with respect to the affirmative defense of the statute of limitations (with respect to which, in docket No. 3405-05L, we withheld judgment), we found that none raised any issue that demonstrates error or abuse of discretion on the part of the settlement officer. We incorporate herein by this reference those findings and the analyses supporting them (summarized supra in our background discussion).

With respect to their affirmative defenses of the statute of limitations, petitioners apparently rely only on the stipulated fact that Ms. Osborn reviewed petitioners' records and advised counsel for petitioners that the assessments were time barred. The parties have also stipulated that Ms. Osborn is a forensic accountant and she is not recognized as an enrolled agent before the IRS. Ms. Osborn did not testify in these cases. Ms. Osborn did, however, testify in other consolidated cases heard at the Las Vegas trial session. She testified to nothing more

---

[2](...continued)
Moreover, we believe that the Court of Appeals for the Seventh Circuit, where, barring a stipulation to the contrary, any appeal by petitioner would lie, see sec. 7482(b), would agree. See Coleman v. Commissioner, 791 F.2d 68, 71-72 (7th Cir. 1986) ("The purpose of §§ 6673 and 6702, like the purpose of Rules 11 and 38 [Fed. R. Civ. P. and Fed. R. App. P., respectively] and of [28 U.S.C.] § 1927, is to induce litigants to conform their behavior to the governing rules regardless of their subjective beliefs.").

remarkable than that, after an assessment of tax is made, record of that assessment is posted to the IRS' computerized record system. Davis v. Commissioner, T.C. Memo. 2007-201. Ms. Osborn's theory that assessment predating posting indicates something fraudulent was rejected by the court in Dahmer v. United States, 90 AFTR 2d 2002-6804, 2002-2 USTC par. 50,806 (W.D. Mo. 2002), in a ruling that accepted the Government's position that

> the Dahmers' evidence that the June 25, 1993[,] assessment was entered into the IRS administrative computer records in October 1993 provided no evidence of fraud because an assessment occurs on the date an authorized official signs a summary record of assessment containing the taxpayer's assessment rather than the date the assessment is posted to the IRS computerized record system. * * *

Indeed, petitioners neglect even to discuss Ms. Osborn or her "cycle post date" theory in their written responses to our orders to show cause, which suggests to us that they no longer attach any value to her testimony or theory. See Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001) (concluding that taxpayers abandoned arguments and contentions asserted prior to the filing of their brief where they failed to advance those arguments and contentions on brief). We see no merit in the affirmative defense.

Petitioners' inability to show the merit of any averment, claim, or argument advanced by them leads us to the conclusion that they initiated and have maintained these proceedings

primarily for delay, and we so find. A taxpayer's good faith reliance on the advice of counsel is not a defense to the imposition of a penalty under section 6673(a)(1)(B), nor need we excuse a taxpayer's failure to review pleadings and other documents filed on his behalf. The purpose of section 6673 is to compel taxpayers to think and to conform their conduct to settled principles before they file returns and litigate. Takaba v. Commissioner, 119 T.C. 285, 295 (2002); see also Coleman v. Commissioner, 791 F.2d 68, 71 (7th Cir. 1986). Indeed, petitioners were warned by the settlement officer that, by asserting unfounded allegations of procedural defects, they risked exposure to penalties under section 6673(a)(1).

Not only do we determine that petitioners are deserving of a penalty for conduct that violates section 6673(a)(1)(A) and (B), but we believe that they are deserving of a penalty pursuant to section 6673(a)(1)(C) for unreasonably failing to pursue available administrative remedies. As summarized in our background discussion under the heading Determinations, petitioners neither proposed any collection alternatives nor provided the settlement officer the financial information necessary to consider collection alternatives. Assuming that they had a case to make to the settlement officer, petitioners did not act reasonably in presenting less than their full case to her during the administrative process.

C. Conclusion

Taking into account respondent’s position, we shall make absolute our orders to show cause in these cases and impose on petitioners in each case a penalty pursuant to section 6673(a)(1) in the amount of $5,000 (for a total, in all three cases, of $15,000).

III. Section 6673(a)(2) Liability of Counsel for Excessive Costs

A. Positions of the Parties

Respondent’s position is that we should impose excess costs on counsel pursuant to section 6673(a)(2). Respondent argues that, on behalf of their clients, counsel made only frivolous arguments and advanced only groundless claims, and they did so knowingly or, at least, recklessly. Respondent claims that at no point in these proceedings have they shown the merit of any argument or claim made by them on behalf of petitioners. Respondent focuses on Mr. Jones’s perseverance in challenging petitioners’ underlying tax liabilities notwithstanding the clear language of section 6330(c)(2)(B) prohibiting such challenges to taxpayers who have received notices of deficiency and the well-defined caselaw interpreting that section. Respondent notes that the motions to amend petitions were filed less than 2 months before the start of the Las Vegas trial session and the amended petitions contain only additional claims that were all determined to be meritless by the Court. Respondent implies that counsel

filed the motions only to vex respondent. Respondent argues that the lack of citation to relevant legal authorities in the oppositions to the motions for summary judgment signed by both Mr. Jones and Ms. Lacorte indicates their lack of legal research or their willful disregard of adverse authority. Respondent concludes:

> Mr. Jones' entire conduct in this case constitutes bad faith, in that he knowingly or recklessly filed petitions, motions for leave to amend petitions, amended petitions, and oppositions to respondent's summary judgment motions that raised nothing but frivolous, groundless, or statutorily precluded arguments. Ms. Lacorte's involvement was limited to participation in the filing of motions for leave to amend petition and oppositions to respondent's summary judgment motions.

Respondent claims that he incurred excessive costs of $12,798 in litigating all of these cases and asks payment in that amount.

Alternatively, if we do not impose excess costs on Mr. Jones and Ms. Lacorte under section 6673(a)(2), respondent asks that we sanction both individuals under Rule 33(b), which sets standards in connection with counsel's signature on a pleading and provides that counsel may be sanctioned for failure to meet those standards.

Mr. Jones and Ms. Lacorte advance as their own defense the arguments made on behalf of petitioners. They also claim errors in respondent's calculation of his costs. Mr. Jones states that, at all times relevant to these cases, Ms. Lacorte was his employee, subject to his direction and advice, and is in no way

responsible for the decisions made in connection with the initiation or prosecution of these cases. Ms. Lacorte agrees with that description of her relationship to Mr. Jones.

B. Discussion

1. Introduction

We accept that Mr. Jones is principally responsible for the decisions of counsel made in these cases and Ms. Lacorte, his employee, at all times worked under his direction and control. We shall hold only Mr. Jones financially responsible for the excessive costs we determine.

2. Requirements for an Award of Excess Costs

Section 6673(a)(2) plainly imposes three prerequisites to an award of excess costs. First, the attorney or other practitioner (without distinction, attorney) must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings; i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct." See Amlong & Amlong, P.A. v. Denny's, Inc., 457 F.3d 1180, 1190 (11th Cir. 2006) (with reference to the analogous language of 28 U.S.C. sec. 1927).

3. Unreasonable and Vexatious Conduct

The purpose of section 6673(a)(2) is to penalize an attorney for his misconduct in unreasonably and vexatiously multiplying the proceedings. Congress has not, however, specified the degree of culpability that an attorney must exhibit before we may conclude that his conduct in multiplying the proceedings is unreasonable and vexatious. See, e.g., Takaba v. Commissioner, 119 T.C. at 296-298. The language of section 6673(a)(2) is substantially identical to that of 28 U.S.C. sec. 1927 (the two provisions serving the same purpose in different forums), and we have relied on caselaw under the latter to ascertain the degree of culpability necessary to make an award under the former. Takaba v. Commissioner, supra at 296-297. While most of the United States Courts of Appeals have required a showing of bad faith before awarding costs under 28 U.S.C. sec. 1927, a few have required only a showing of recklessness, a lesser degree of culpability. Id. at 297. Among those few is the Court of Appeals for the District of Columbia Circuit. See Reliance Ins. Co. v. Sweeney Corp., 792 F.2d 1137, 1138 (D.C. Cir. 1986). The venue for appeal of any award of costs imposed on Mr. Jones may be the Court of Appeals for the District of Columbia Circuit. See sec. 7482(b)(1) (second sentence); Takaba v. Commissioner, supra. If not, it may be the Court of Appeals for the Seventh Circuit. See sec. 7482(b)(1)(A). The Court of Appeals for the

Seventh Circuit has held that a finding of bad faith is necessary before an attorney may be sanctioned under section 6673(a)(2). Johnson v. Commissioner, 289 F.3d 452, 456 (7th Cir. 2002), affg. 116 T.C. 111 (2001). The Court of Appeals added, however, that bad faith under section 6673(a)(2) is not a subjective concept: "'reckless' or 'extremely negligent' conduct will satisfy it." Id. Because we are unsure of appellate venue, and because we find that Mr. Jones's conduct would constitute bad faith under the Court of Appeals for the Seventh Circuit's test for bad faith, we shall for purposes of this case (and without deciding the standard in this Court), adopt that standard. See Takaba v. Commissioner, supra at 298.

We believe that Mr. Jones intentionally abused the judicial process by bringing and continuing these cases on behalf of petitioners knowing their claims to be without merit. In support of our determination to impose a section 6673(a)(1) penalty on petitioners, we found that they initiated and maintained these proceedings primarily for delay and, in support of that goal, raised frivolous arguments and relied on groundless positions. In other words, petitioners present no meritorious claims. Moreover, we have no doubt that Mr. Jones has known all along that petitioners' claims lack merit. We have no doubt of that because of Mr. Jones's candor in responding to the orders to show cause. In those responses, Mr. Jones admits that, while, on

average, the cases he brings have merit, some do not:

> The Orders to Show cannot be properly answered in the context of analysis of individual issues raised on appeal from CDP [sec. 6330] hearings. This is true because there are some "L" [sec. 6330] case docket numbers which standing alone do not have appealable issue[s]. However, in conjunction with other related "L" case docket numbers, and sometimes statutory notice of deficiency docket numbers[, they] have sufficient appealable issues, and "hazards of litigation" which justify settlement of all docket numbers before the Court[,] as agreed upon by petitioners, their counsel, and the IRS Office of Chief Counsel acting on behalf of respondent.

All the amended petitions raise substantially the same issues. If Mr. Jones believed that those issues were "appealable issues", by which term we assume that he means meritorious issues, then there would be no reason for him to make his probabilistic argument; i.e., while some of my cases have no merit, some do, so that, on average, all of my cases have merit, and each is entitled to a portion of some wholesale settlement. That Mr. Jones does indeed take a wholesale approach to representing clients before this Court is supported by his request that we take notice that, during the three trial sessions of the Tax Court in Las Vegas, Nevada, between December 2004 and February 2006, Mr. Jones and his clients settled 67 cases, agreeing to make payments of $2,564,788 with respect to $11,067,835 of claimed liabilities.[3]

---

[3] That Mr. Jones takes a wholesale approach in representing clients before the Court is also evidenced by the fact that he (continued...)

A difficulty with Mr. Jones's wholesale approach, and the reason we believe that he intentionally abused the judicial process, is that, in taking that approach, Mr. Jones violated the well-known duty of an attorney before this Court to insure that there is merit to <u>every</u> case that he brings before the Court. That duty is imposed on Mr. Jones both by our Rules and by the ABA Model Rules of Professional Conduct (Model Rules), which, by Rule 201(a), govern his practice before this Court.[4]

In pertinent part, Rule 33(b) provides:

> (b) <u>Effect of Signature</u>: The signature of counsel * * * constitutes a certificate by the signer that the signer has read the pleading; that, to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading is signed in violation of this Rule, the Court, upon motion or upon its own initiative, may impose upon the person who signed it * * * an appropriate sanction, which may include an order to pay to the other party or parties the amount of the

---

[3](...continued) made the same probabilistic argument in <u>Davis v. Commissioner</u>, T.C. Memo. 2007-201.

[4] The Court of Appeals for the Seventh Circuit has held that a showing of objective bad faith (i.e., recklessness or extreme negligence) is all that is necessary to impose costs on an attorney under sec. 6673(a)(2). <u>Johnson v. Commissioner</u>, 289 F.3d 452, 456 (7th Cir. 2002), affg. 116 T.C. 111 (2001). If Mr. Jones were to claim a lack of familiarity with our rules of practice and the ABA Model Rules of Professional Conduct, we would conclude that he acted recklessly in representing petitioners before the Court in ignorance of applicable rules.

> reasonable expenses incurred because of the filing of the pleading, including reasonable counsel's fees.

The effect of a signature on a motion is the same as the effect of a signature on a pleading. Rule 50(a).

In pertinent part, Model Rules 3.1 states: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

Mr. Jones has signed pleadings and other papers to bring and defend these proceedings knowing petitioners' claims to be meritless.[5] He has done so in violation of our Rules and the Model Rules and, thus, has intentionally abused the judicial process. If by that conduct he has multiplied the proceedings, he is deserving of sanctions for unreasonably and vexatiously multiplying the proceedings within the meaning of section 6673(a)(2). See Johnson v. Commissioner, supra.

4. Multiplication of the Proceedings

These proceedings should never have been brought. All of respondent's costs are, thus, in a sense, excessive. There is, however, some disagreement among the Courts of Appeals in interpreting 28 U.S.C. sec. 1927 as to whether it is only

---

[5] The pleadings and papers we have in mind are the petitions, motions for leave to amend petition, amended petitions, and objections to the motions for summary judgment.

possible to multiply, or prolong, the proceedings after a case has been initiated; presumably because an attorney cannot begin to multiply the proceedings until some proceeding has come into existence for the attorney to multiply. Compare Moore v. Keegan Mgmt. Co., 78 F.3d 431, 435 (9th Cir. 1996) (28 U.S.C. sec. 1927 "applies only to unnecessary filings and tactics once a lawsuit has begun"), with In re TCI Ltd., 769 F.2d 441, 448 (7th Cir. 1985) (under 28 U.S.C. sec. 1927, trial judge "had the authority to award the fees incurred right from the beginning"). We have not addressed the analogous issue under section 6673(a)(2), and we are not compelled to do so today since, with respect to respondent's costs incurred in responding to the first pleadings (i.e., answering the petitions), there is adequate basis under Rule 33(b) for imposing upon Mr. Jones respondent's reasonable expenses, including reasonable counsel's fees, incurred in answering those pleadings.

The text of Rule 33(b) is set forth supra. By signing a pleading, the signer certifies, among other things, that, after a reasonable inquiry, he has concluded that, to the best of his knowledge, the pleading is well grounded in fact and law. The signer must inquire into both the facts and the law at the time the pleading is filed. Versteeg v. Commissioner, 91 T.C. 339, 342 (1988). Mr. Jones does not argue that he made a reasonable inquiry that led to his erroneous conclusion that petitioners'

claims had merit. Indeed, we have concluded that he signed the petitions <u>knowing</u> that they lacked merit. Mr. Jones signed the petitions in violation of Rule 33(b) and is deserving of a sanction on account thereof.

5. <u>Excess Costs</u>

Attorney's fees awarded under section 6673(a)(2) are to be computed by multiplying the number of excess hours reasonably expended on the litigation by a reasonable hourly rate. <u>Takaba v. Commissioner</u>, 119 T.C. at 303. The product is known as the “lodestar” amount. <u>Id.</u> To assist us in computing the lodestar amount, respondent has provided us with the declarations of attorneys Alan J. Tomsic, Wesley J. Wong, and Paul C. Feinberg (Messrs. Tomsic, Wong, and Feinberg, respectively, and the Tomsic, Wong, and Feinberg declarations, respectively). Attached to the Tomsic and Wong declarations are copies of reports generated from respondent’s internal time keeping records showing the number of hours expended on these cases by Messrs. Tomsic and Wong. Although the Feinberg declaration includes the number of hours he expended on these cases, he does not provide reports similar to those provided by Messrs. Tomsic and Wong, declaring that he does not keep detailed records by individual case number for time he spends in a supervisory capacity. Messrs. Tomsic and Wong, explicitly, and Mr. Feinberg, by inference, calculate their time expended working on these cases from their first contacts

with the cases; i.e., for Mr. Tomsic, from review of the case files leading to his drafting motions to extend time to answer.

Respondent asks to be reimbursed for 12 hours of Mr. Tomsic’s time, at $150 an hour, 72 hours of Mr. Wong’s time, at $125 an hour, and 10 hours of Mr. Feinberg’s time, at $200 an hour. Respondent provides the following chart showing the allocations of hours and dollars among docket numbers.

| | 3405-05L | 3489-05L | 3490-05L | Total |
|---|---|---|---|---|
| Hours–Alan J. Tomsic | 4 | 4 | 4 | 12 |
| “Lodestar” amount at $150/hour (Tomsic) | $600.00 | $600.00 | $600.00 | $1,800.00 |
| Hours–Wesley J. Wong | 22.50 | 25.50 | 24.00 | 72.00 |
| “Lodestar” amount at $125/hour (Wong) | $2,812.50 | $3,187.50 | $3,000 | $9,000 |
| Hours–Paul C. Feinberg | 3.33 | 3.33 | 3.33 | 9.99 |
| “Lodestar” amount at $200/hour (Feinberg) | $666.00 | $666.00 | $666.00 | $1,998.00 |
| “Lodestar” amount (Total) | $4,078.50 | $4,453.50 | $4,266.00 | $12,798.00 |

Mr. Tomsic is the attorney who first had primary day-to-day responsibility for these cases. He is an attorney employed in the IRS Office of Chief Counsel in Las Vegas, Nevada. He has been a member of one or more State bars since 1981. He is admitted to practice before the United States Tax Court. His declaration contains the following chart showing the hours he spent on these cases.

| | 3405-05L | 3489-05L | 3490-05L | Total |
|---|---|---|---|---|
| Reviewed case and prepared motions to extend time to answer | 1 | 1 | 1 | 3 |
| Reviewed motions for leave to amend petition; discussed response to such motion with Wesley J. Wong; drafted responses to motions for leave to amend petition | 1 | 1 | 1 | 3 |
| Reviewed amended returns; discussed with Wesley J. Wong; began preparation of settlement documents | 2 | 2 | 2 | 6 |
| Total hours | 4 | 4 | 4 | 12 |

Mr. Wong is the attorney who succeeded Mr. Tomsic with respect to primary day-to-day responsibility for these cases. He is an attorney employed in the IRS Office of Chief Counsel in Las Vegas, Nevada. He has been a member of one or more State bars since 1999. He is admitted to practice before the United States Tax Court. His declaration contains the following chart showing the hours he spent on these cases.

| | 3405-05L | 3489-05L | 3490-05L | Total |
|---|---|---|---|---|
| Reviewed case file | 1.50 | 1.00 | 1.50 | 4.00 |
| Prepared and filed answers to petition | 2.50 | 2.00 | 2.50 | 7.00 |
| Meeting with petitioners' counsel | 1.00 | 2.00 | 2.00 | 5.00 |
| Prepared response to motions for leave to amend petition | 0.25 | 0.25 | 0.25 | 0.75 |
| Motions for summary judgment | 7.75 | 9.75 | 7.75 | 25.25 |
| Answered amended petitions | -- | 1.00 | 1.00 | [1]3.00 |
| Researched and wrote respondent's pretrial memorandum | 0.75 | 0.75 | 0.75 | 2.25 |

| | | | | |
|---|---|---|---|---|
| Prepared for and attended Las Vegas trial session | 8.75 | 8.75 | 8.25 | [1]24.75 |
| Total hours | 22.50 | 25.50 | 24.00 | 72.00 |

[1] The sum of the sixth row (Answered amended petitions) should be 2 hours and the sum of the eighth row (Prepared for and attended Las Vegas trial session) should be 25.75 hours. The correct total hours, however, is 72 hours.

Mr. Feinberg is an Associate Area Counsel in the IRS Office of Chief Counsel in Las Vegas, Nevada. He has been in that position since September 2002 and has been employed by the Chief Counsel since July 1991. He has been a member of one or more State bars since 1979. He is admitted to practice before the United States Tax Court. His responsibilities include, among other things, supervising the litigation of cases before the Court. In connection with these cases, he supervised the activities of Messr. Tomsic and Wong, and, as supervisor, he familiarized himself with the cases, discussed handling of the cases and issues presented, reviewed all documents that were prepared for filing with the Court, and attended all proceedings concerning the cases at the Las Vegas trial session. He estimates that he spent a total of 10 hours on these cases.

Respondent claims that it is reasonable to utilize hourly charges of $150, $125, and $200 for Messrs. Tomsic’s, Wong’s, and Feinberg’s time, respectively, in computing the lodestar amounts for these cases. Respondent argues that those rates are consistent with the rates that were allowed by the Court for the

Commissioner's trial and supervisory attorneys in 2002, in Takaba v. Commissioner, 119 T.C. at 304-305.

Mr. Jones does not question the reasonableness of the hourly rates claimed for Messrs. Tomsic, Wong, and Feinberg. Mr. Jones has principally two objections to the award of excess costs. First, he objects to respondent's claim that all of the hours expended by his attorneys are excessive and deserving of compensation. Second, he claims that respondent fails to describe and substantiate the nature of the services rendered by his attorneys.

We see no merit to either of Mr. Jones's objections. As we have made plain, these cases are without merit and never should have been brought. By their declarations, Messrs. Tomsic, Wong, and Feinberg describe adequately their activities with respect to these cases. Messrs. Tomsic's and Wong's declarations are accompanied by computer records that, we assume, were made contemporaneously with the work performed and support their claims. Moreover, we are familiar with the procedural and factual history of these cases, and we believe that 12 hours was reasonably necessary for Mr. Tomsic to do the work he describes. We find that $150 is a reasonable hourly charge for Mr. Tomsic's time, and he reasonably expended 12 hours on this litigation. The lodestar amount for Mr. Tomsic is, thus, $1,800. We believe that 72 hours was reasonably necessary for Mr. Wong to do the

work he describes. We find that $125 is a reasonable hourly charge for Mr. Wong's time and he reasonably expended 72 hours on this litigation. The lodestar amount for Mr. Wong is, thus, $9,000. We accept at face Mr. Feinberg's descriptions of his duty and activities and find reasonable his claim that he spent 10 hours in those activities. We find that $200 is a reasonable hourly charge for Mr. Feinberg's time, and he reasonably expended 10 hours on this litigation. The lodestar amount for Mr. Feinberg is, thus, $1,998 (that is all that respondent claims).

The total lodestar amount for the time of Messrs. Tomsic and Feinberg is $12,798. Respondent has not itemized costs for travel expenses, photocopying, or supplies used in preparing the cases. Respondent limits his request for costs to the total lodestar amount. We shall require Mr. Jones to pay costs in that amount.

C. Conclusion

We find that $12,798 is a reasonable amount for respondent's excess attorney's fees incurred by reason of Mr. Jones's unreasonable and vexatious multiplication of these proceedings. Therefore, we shall make the orders to show cause absolute and order Mr. Jones personally to pay $4,078.50, $4,453.50, and

$4,266.00, in docket Nos. 3405-05L, 3489-05L, and 3490-05L, respectively, pursuant to section 6673(a)(2).[6]

IV. Conclusion

To reflect the foregoing,

An appropriate order will be issued, and an order and decision will be entered in each docket.

---

[6] Alternatively, with respect to respondent's attorney's fees allocated to reviewing case files and answering petition, we make the award pursuant to Rule 33(b), as discussed supra.