# In the United States Court of Federal Claims

No. 06-598 T

(Filed July 27, 2007)

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | Tax; Challenges to Tax Levies and Tax |
| | * | Lien-Related Collections; 11 U.S.C. |
| FOUR RIVERS | * | § 362(b)(9)(D) (2000); 26 U.S.C. |
| INVESTMENTS, INC., | * | §§ 6325(b), 6532(c), 7426(a)(4) (2000); |
| | * | 28 U.S.C. § 1346(a)(1) (2000); |
| *Plaintiff*, | * | Jurisdiction; Equitable Tolling; IRS Tax |
| | * | Assessments Exempt from Bankruptcy's |
| v. | * | Automatic Stay; *United States v.* |
| | * | *Williams*, 514 U.S. 527 (1995); |
| THE UNITED STATES, | * | Exclusiveness of Remedy for Obtaining |
| | * | Judicial Review of an IRS Tax Lien |
| *Defendant*. | * | Placed on a Third Party's Real Property; |
| | * | Threshold Jurisdictional Inquiry as Part |
| | * | of Injunctive Relief Analysis. |
| * * * * * * * * * * * * * | * | |

*Robert Alan Jones*, Las Vegas, NV, for plaintiff.

*Joseph B. Syverson*, United States Department of Justice Tax Division, with whom were *Eileen J. O'Connor*, Assistant Attorney General, *David Gustafson*, Chief, Court of Federal Claims Section, *Mary M. Abate*, Assistant Chief, Washington, D.C., for defendant.

---

## OPINION

---

**Bush**, *Judge*.

Plaintiff filed suit in this court on August 22, 2006, and amended its

complaint on April 18, 2007 and May 25, 2007. Plaintiff seeks the return of monies it alleges were "wrongfully levied/seized" by the Internal Revenue Service of the United States Department of the Treasury (IRS). Defendant contests this court's jurisdiction over plaintiff's claims and filed a motion to dismiss the complaint on May 3, 2007. Defendant's motion has been fully briefed. Plaintiff has also filed a Request for Temporary Restraining Order and Injunction addressing recent collection activities by the IRS, which has also been fully briefed.[1] For the reasons stated below, the court grants defendant's motion to dismiss and denies plaintiff's request for injunctive relief.[2]

## BACKGROUND[3]

Plaintiff Four Rivers Investments, Inc. (Four Rivers) is a Nevada corporation doing business in California, whose sole owner is Vicki Seidel.[4] Compl. ¶ 3, Ex. 1 ¶ 4. Vicki Seidel is married to Thomas Seidel. *Id.* ¶ 6. Thomas Seidel was president of T.E. Seidel Electric, Inc. (Seidel Electric). *Id.* ¶ 5. Seidel Electric operated from June 1, 1992 through June 1, 1996.

Mr. Seidel failed "to collect and pay over employment taxes in his capacity as the president of T.E. Seidel Electric, Inc." Def.'s Mot. at 2; Compl. ¶ 5. Mr.

---

[1]/ Plaintiff's request for a hearing regarding its request for injunctive relief is denied. The court allowed ample time for briefing concerning plaintiff's request, and issued an order on June 15, 2007 specifically requesting that the parties address in their remaining briefs the one question that required additional clarification. Furthermore, the law is abundantly clear on the jurisdictional barriers preventing this court from reaching the merits of plaintiff's claims. Thus, a hearing on plaintiff's request for injunctive relief, a remedy conditioned on the likelihood of plaintiff's success on the merits, would have been a wasteful expenditure of the resources of the parties and this court.

[2]/ Defendant filed a Motion for Leave to File Notice of Supplemental Authority on July 26, 2007. Defendant's motion is denied as moot, because defendant's other arguments were persuasive on the jurisdictional issues discussed in this opinion.

[3]/ The facts recited here are taken from the parties' pleadings and are undisputed unless otherwise noted. The court makes no findings of fact in this opinion.

[4]/ Plaintiff has indiscriminately employed both "Investments" plural and "Investment" singular in describing its corporate name throughout its filings with this court and in other documents submitted as exhibits.

Seidel was assessed a one hundred percent trust fund recovery penalty, "pursuant to 26 U.S.C. § 6672 [(2000)] for failing to collect and pay over certain payroll tax[es] owed to the IRS." Compl. ¶ 5; Def.'s Mot. at 2. The penalty assessment totaled $601,251.24 for the tax period ending September 30, 1996.

Seidel Electric filed for Chapter 7 bankruptcy with no assets on August 8, 1996. On October 25, 1996, the Seidels filed for their own Chapter 7 bankruptcy. The date of the IRS penalty assessment against Thomas Seidel is in dispute. According to plaintiff, the IRS assessment occurred in December 1996, but was then "fraudulently backdated" to October 23, 1996. Compl. ¶ 10; Pl.'s Opp. at 2, 4. According to defendant, the penalty assessment occurred on October 23, 1996. The difference in alleged assessment dates is not material to the jurisdictional motion before the court.

The IRS collection activities that are at issue in this suit occurred from 2003 to 2005, and are related to the penalty assessed against Mr. Seidel in 1996. The IRS levied against a Four Rivers bank account at Wells Fargo Bank in Salinas, California in April 2003, and credited the amount received, $4,011.87, against Mr. Seidel's outstanding balance with the IRS. The IRS also levied against a Four Rivers account at A.G. Edwards & Sons, Inc. in Monterey, California in April 2003, and credited the amount received, $41,007.32, to Mr. Seidel's outstanding balance. In both instances, the IRS levied against accounts belonging to Four Rivers, "as the nominee, alter ego, and/or transferee of Thomas E. Seidel." Def.'s Mot. at 3.

In addition, in April 2003, the IRS placed a lien against Four Rivers' property rights in real property located in Monterey County, California. The lien named Four Rivers "as the Nominee, alter ego, and/or transferee of Thomas E. Seidel." Def.'s Mot. at 4. This lien, in the amount of almost $600,000, affected the proposed sale of a parcel of property in Salinas, California that was held in the name of Four Rivers. In November 2004, Four Rivers applied to the IRS for a discharge of the lien as it applied to the Salinas property being sold. The IRS conditioned the discharge of the lien on payment of $161,334.55 and $143.90, or a total of $161,478.45. This amount, which was received by the IRS in two payments, one in November 2004 and the other in March 2005, was credited to Thomas Seidel's outstanding balance with the IRS and the IRS issued a certificate of discharge from the tax lien for the Salinas property.

## DISCUSSION

### I. Standard of Review for a Motion to Dismiss for Lack of Jurisdiction

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)), and must do so by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748. If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

### II. Standard of Review for a Request for a Temporary Restraining Order or Preliminary Injunction

“Four factors are weighed in considering a motion for a preliminary injunction: (1) immediate and irreparable injury to the movant; (2) the movant’s likelihood of success on the merits; (3) the public interest; and (4) the balance of hardship on all the parties.” *U.S. Ass’n of Importers of Textiles & Apparel v. United States Dep’t of Commerce*, 413 F.3d 1344, 1346 (Fed. Cir. 2005) (*USA-ITA*) (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983)). A motion for a temporary restraining order is decided upon consideration of the same four factors. *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001) (citations omitted). If jurisdiction is challenged, a court must consider that challenge as a threshold issue, because lack of jurisdiction will preclude likelihood of success of the merits, the second factor in determining the appropriateness of injunctive relief. *See USA-ITA*, 413 F.3d at 1348 (“We disagree, however, that . . . jurisdictional arguments could be ignored in ruling on [a] preliminary injunction motion. The question of jurisdiction closely affects the [plaintiff’s] likelihood of success on its motion for a preliminary injunction. Failing to consider [jurisdiction would be] legal error.”).

## III. Jurisdiction over Plaintiff's Challenge to Tax Levies

Plaintiff Four Rivers challenges the legality of the two IRS levies and the tax lien-related collections by the IRS, citing a variety of legal arguments. The initial question, however, is whether Four Rivers has brought claims that are within the jurisdiction of this court. The court addresses plaintiff's challenge to the tax levies first, and then will proceed to a discussion of plaintiff's challenge to the tax lien-related collections.[5]

### A. Statute of Limitations

When a third party such as Four Rivers contests a levy upon its assets by the IRS, which is collecting monies owed by another person, this type of action is known as a "wrongful levy claim." *EC Term of Years Trust v. United States*, 127 S. Ct. 1763, 1768 (2007). The statute of limitations for this type of wrongful levy claim is provided by 26 U.S.C. § 6532(c) (2000). *Id.* at 1766; *Gordon v. United States*, 649 F.2d 837, 844 (Ct. Cl. 1981) (holding that § 6532(c) "require[s] levy contests [in this court] to be brought within 9 months of [the] levy"). Barring a request by the third party for an administrative review of the levy, a circumstance not alleged here, the third party has nine months to contest an IRS levy on its assets. 26 U.S.C. § 6532(c)(1); *EC Term of Years Trust*, 127 S. Ct. at 1766 n.1; *Gordon*, 649 F.2d at 844.

The IRS levied on Four Rivers' two accounts in April 2003. Four Rivers' wrongful levy claim was not filed until August 2006, more than three years later. Four Rivers' claim is therefore untimely, pursuant to § 6532(c).

---

[5]/ Plaintiff appears to have abandoned its theory that 26 U.S.C. § 7433A (Supp. IV 2004) provides jurisdiction for its suit. Defendant's motion to dismiss argues that this statute was not in effect at the time of the actions contested by plaintiff; that it only provides jurisdiction in United States District Courts; and, that it applies only to acts of contractors for the IRS. *See* Def.'s Mot. at 25-26. Plaintiff's opposition brief makes no mention of § 7433A or of defendant's arguments. The court cannot divine how § 7433A could be applicable to plaintiff's claims and finds that 26 U.S.C. § 7433A does not provide jurisdiction for the subject matter. *See* 26 U.S.C. § 7433A(b)(1) (stating that suits founded on this section "shall be brought against [the contractor] and *shall not be brought against the United States*") (emphasis added).

Statutes of limitations are jurisdictional. *See, e.g.*, *Fed. Nat'l Mortgage Ass'n v. United States*, 469 F.3d 968, 973 (Fed. Cir. 2006) (holding that another Internal Revenue Code statute of limitations was jurisdictional). Because Four Rivers' wrongful levy claim is untimely, this court has no jurisdiction over that claim. For this reason, plaintiff's wrongful levy claim must be dismissed.[6]

**B. Equitable Tolling**

Plaintiff has raised only one argument to forestall the dismissal of its wrongful levy claim.[7] Plaintiff suggests that § 6532(c) may be equitably tolled. The court disagrees.

The United States Supreme Court has held that "the same rebuttable presumption of equitable tolling [of statutes of limitations] applicable to suits against private defendants should also apply to suits against the United States[, although] Congress, of course, may provide otherwise if it wishes to do so." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95-96 (1990). Even though the federal government does not receive a special immunity from the application of equitable tolling principles, "no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants." *Id.* at 96. Thus, if the adversary of a private party defendant would benefit from the availability of equitable tolling of a statute of limitations concerning wrongful levy-type claims, an adversary of the United States might similarly benefit from the availability of equitable tolling of § 6532(c), unless Congress has provided otherwise. *See Kirkendall v. Dep't of Army*, 479 F.3d 830, 837 (Fed. Cir. 2007) ("First, we determine whether such tolling is available in a sufficiently analogous private suit.").

---

[6]/ The court need not decide whether wrongful IRS levy claims may only be pursued in a United States District Court pursuant to 26 U.S.C. § 7426(a)(1) (2000), because the statute of limitations issue is, by itself, determinative. If, as defendant artfully argues, the *Gordon* holding allowing timely wrongful levy suits to proceed in this court is no longer good law, this is not the occasion to resolve that question.

[7]/ Although plaintiff cryptically announced that "there is also a longer refund claim statute available to the Plaintiff here" at the opening of its opposition brief, *see* Pl.'s Opp. at 2, no citation or further mention was made of the unnamed statute which would permit plaintiff a longer limitations period for the filing of its wrongful levy claim. Plaintiff has thus abandoned any argument that another statute of limitations applies to its wrongful levy claim.

There may or may not be causes of action analogous to the wrongful levy suits authorized against the IRS.[8] *See United States v. Brockamp*, 519 U.S. 347, 350 (1997) (citing authority distinguishing between suits against a tax collector and suits against private parties); *Becton Dickinson & Co. v. Wolckenhauer*, 215 F.3d 340, 349 (3d Cir. 2000) (*Becton Dickinson*) (holding that wrongful levy suits against the IRS do not have parallels in private suits because the relevant tax code section "creates only a cause of action against the government"). In *Becton Dickinson*, the United States Court of Appeals for the Third Circuit examined the question of whether wrongful levy suits against the IRS have a private party suit equivalent. 215 F.3d at 348-49. Because the nine month limitations period expressed in § 6532(c) "does not and would not apply to private suits at common law for the recovery of money converted," the *Becton Dickinson* court reasoned that there was neither an analogous suit, nor equitable tolling of an analogous limitations period, among private parties that would require the court to consider the appropriateness of equitable tolling for § 6532(c). *Id.* at 349.

The United States Court of Appeals for the Federal Circuit appears to have a somewhat more lenient view of the required level of parallelism between private party suits and suits against the government, however. In cases brought under the National Childhood Vaccine Injury Act of 1986, codified as amended at 42 U.S.C.A. §§ 300aa-1 to -34 (West 2003 & Supp. 2007), the Federal Circuit determined that Vaccine Act suits were analogous to tort claims among private parties and that the availability of equitable tolling of limitations periods in private tort suits required further analysis of the equitable tolling issue in vaccine cases against the United States. *Brice v. Sec'y of Health and Human Servs.*, 240 F.3d 1367, 1372 (Fed. Cir. 2001). The Federal Circuit, applying *Irwin* and *Brockamp*, described the criteria for finding an analogous suit for the purposes of examining the availability of equitable tolling:

> If the suit against the government bears no similarity to a

[8]/ In the court's order of June 15, 2007, the court asked the parties to address the question of whether equitable tolling is available in private suits analogous to the wrongful levy suit here. Plaintiff did not address the question, merely asserting, with no discussion of private suits analogous to wrongful levy suits against the IRS, that "[t]he United States is not immune from the equitable tolling doctrine." Pl.'s TRO Mot. Reply at 5. Defendant cited only to *Brockamp* and *Becton Dickinson, see* text accompanying this note, for commentary on this topic. Def.'s Reply at 15 & n.10, 16.

> private suit, there is no basis for the presumption that Congress intended private equitable tolling rules to apply. Thus, for example, there is no reason to assume that a federal deadline for filing suit to challenge a generally applicable government regulatory requirement should be governed by equitable tolling principles developed in private litigation. But the rule of "similarity" generally should not apply in the context of monetary claims against the government to bar equitable tolling. The distinctions set forth by the government between a Vaccine Act claim and a traditional tort action are not sufficient, in the words of *Brockamp*, to avoid "asking Irwin's negatively phrased question: Is there good reason to believe that Congress did not want the equitable tolling doctrine to apply?" *Brockamp*, 519 U.S. at 350, 117 S. Ct. 849. In substance, a claim under the Vaccine Act is similar to a traditional tort claim in the sense that it seeks monetary recovery from an injury that traditionally was redressed by tort law. The Vaccine Program's procedural and remedial distinctions from the traditional tort system do not change this fundamental fact.

*Id.*

Thus, it is the court's understanding, pursuant to the holding of *Brice*, that the crucial issue in looking for analogous suits among private parties is not whether the federal statute in question creates a cause of action solely against the government, but whether a private suit exists which asserts rights against a private defendant similar to the rights asserted, pursuant to the federal statute, against the government. To conduct this inquiry here, the court must decide whether some cause of action resembles suing the IRS for the return of monies wrongfully levied. A tort suit for conversion is mentioned by the *Becton Dickinson* court in its consideration of potentially analogous suits between private parties. 215 F.3d at 349; *see also* Black's Law Dictionary 357 (8th ed. 2004) (defining direct conversion as "[t]he act of appropriating the property of another to one's own benefit" and fraudulent conversion as "[c]onversion that is committed by the use of

fraud"). Another cause of action that appears to have some surface similarity to the facts alleged here is a suit sounding in fraud. *See* Black's Law Dictionary 685 (8th ed. 2004) (defining fraud in some cases as "[a] tort arising from a knowing misrepresentation, concealment of material fact, or reckless misrepresentation made to induce another to act to his or her detriment"). Assuming, *arguendo*, that wrongful levy suits against the IRS are analogous to tort suits sounding in conversion or fraud, the court must determine whether such suits may be tolled for equitable reasons.

The pertinent statute of limitations for conversion or fraud may be tolled in California, where the IRS actions at issue in this suit occurred, when fraudulent concealment of facts by the defendant has been alleged. Although actions to recover monies lost by means of fraud are subject to a three year limitations period, this period may be extended by the statutory definition of the accrual of the claim:

> An action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.

Cal. Civ. Pro. Code § 338(d) (West 2007). Thus, discovery of fraud, not the act of fraud, starts the limitations period. *Id.*

Similarly, equitable tolling is available in California courts for suits sounding in conversion, according to a "discovery rule" which may toll the three year statute of limitations where the defendant has fraudulently concealed facts which are necessary to the discovery of the conversion of personal property. *See, e.g.*, *AmerUS Life Ins. Co. v. Bank of Am., N.A.*, 49 Cal. Rptr. 3d 493, 499 (Cal. Ct. App. 2006) ("To the extent our courts have recognized a 'discovery rule' exception to toll the statute [of limitations for conversion actions], it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff. In those instances, 'the statute of limitations does not commence to run until the aggrieved party discovers or ought to have discovered the existence of the cause of action for conversion.'") (citations omitted). According to the California Supreme Court,

> [t]he doctrine of fraudulent concealment, which is judicially created, limits the typical statute of limitations. "[T]he defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations . . . ." In articulating the doctrine, the courts have had as their purpose to disarm a defendant who, by his own deception, has caused a claim to become stale and a plaintiff dilatory. The doctrine arose in courts of equity and not in courts of law. Its genesis, however, did not prove to be its confines. It was early extended to be available "in all cases," that is to say, in actions at law as well as suits in equity. It enters into a statute of limitations, if at all, from without, by being "read into" it judicially.

*Regents of Univ. of Cal. v. Superior Court*, 976 P.2d 808, 822-23 (Cal. 1999) (citations omitted). Thus, whether a wrongful levy suit is analogized to suits to recover monies obtained by fraud, or for conversion of personal property,[9] it appears that equitable tolling is available in California to extend the three year statute of limitations pertinent to such actions. Because equitable tolling is sometimes available in what may be "sufficiently analogous private suit[s]" in California, this court will, in the interests of justice, proceed further in the analysis of whether § 6532(c) may be equitably tolled. *See Kirkendall*, 479 F.3d at 837.

The court must conduct a two-step analysis to determine whether a statue of limitations may be equitably tolled:

> In sum, to determine the availability of equitable tolling in suits against the government, we engage in a two-part inquiry. First, we determine whether such tolling is available in a sufficiently analogous private suit. If so, we look to the *Brockamp* factors to determine whether Congress expressed a "clear intent" that equitable tolling

---

[9]/ Under California law, the definition of personal property includes money. *See* Cal. Civ. Pro. Code § 17(b)(3) (West 2007) ("The words 'personal property' include money, goods, chattels, things in action, and evidences of debt.").

> not apply.

*Id.* Assuming, *arguendo*, that equitable tolling may be available in a suit against a private party defendant that is analogous to a wrongful levy suit against the IRS, the court proceeds to the second step in the *Irwin* rebuttable presumption analysis. *See Brockamp*, 519 U.S. at 350 (expressing doubt that suits against the IRS are analogous to suits against private parties, but proceeding to the second step of the *Irwin* analysis); *Becton Dickinson*, 215 F.3d at 349 (concluding that § 6532(c) is not analogous to any statute of limitations for suits between private parties, but nonetheless proceeding to the second step of the *Irwin* analysis). In the second step, the court must apply the *Brockamp* factors to decide if Congress expressed a clear intent that equitable tolling should not apply to § 6532(c). *See Kirkendall*, 479 F.3d at 837.

The five *Brockamp* factors are:

> "the statute's detail, its technical language, its multiple iterations of the limitations period in procedural and substantive form, its explicit inclusion of exceptions, and its underlying subject matter."

*Kirkendall*, 479 F.3d at 836-37 (quoting *Brice*, 240 F.3d at 1372). Not all factors need to be present to find an intent to preclude tolling, and even one factor might suffice. *Id.* (citing *Brice*, 240 F.3d at 1372-73). In *Brice*, for example, only two *Brockamp* factors were present and these were sufficient to preclude tolling: an explicit statutory exception to the limitations period, indicating that a single exception and no others were contemplated by Congress, and a detailed scheme which favored the expeditious resolution of claims. 240 F.3d at 1373.

The Third Circuit has found that § 6532(c) expresses the clear intent of Congress to preclude the equitable tolling of the limitations period for wrongful levy suits against the IRS. *Becton Dickinson*, 215 F.3d at 353. In particular, the Third Circuit noted that the statute contains a specific exception to the nine month deadline for filing suit; satisfying one of the *Brockamp* factors. *Id.* at 350. The Third Circuit also noted that the underlying subject matter was such that allowing individualized equitable exceptions to the nine month limitations period would hamper the efficient functioning of federal tax collection; satisfying a second

*Brockamp* factor. *Id.* at 350-51. For these reasons, and using arguments that appear to be consistent with those employed by the Federal Circuit in *Brice*, the Third Circuit concluded that Congress had expressed a clear intent that § 6532(c) should not be equitably tolled.[10] *Id.* at 353.

The court finds no reason to disagree with the *Becton Dickinson* court's analysis of the *Brockamp* factors found in § 6532(c). There is a specific and explicit statutory exception to the nine month limitations period. *See* 26 U.S.C. § 6532(c)(2). Tax collection would be hampered by uncertainty if levies could be challenged long after the levied money has been applied to delinquent accounts and alternative collection efforts have been foregone by the IRS. *Becton Dickinson*, 215 F.3d at 351 ("Were we to hold that section 6532(c) can be equitably tolled, we would delay the final disposition of competing claims in cases like this one and would jeopardize, perhaps even destroy, the IRS's ability to impose a levy on other assets owned by a delinquent taxpayer."). Both of these factors show that Congress did not intend equitable tolling to apply to § 6532(c). For this reason, the court finds that equitable tolling of 26 U.S.C. § 6532(c) is not permissible.

Finally, even if § 6532(c) could be read to contain an implied equitable tolling exception, plaintiff has not alleged facts here which would entitle a litigant to equitable tolling in any case. As the Supreme Court noted in *Irwin*, "[f]ederal courts have typically extended equitable relief only sparingly." 498 U.S. at 96. The Federal Circuit has stated that

> [o]ur cases, like the Supreme Court's decision in *Irwin*, make clear that equitable tolling against the federal government is a narrow doctrine. As the Supreme Court

---

[10]/ Indeed, it would appear that the tax code's chapter of statutes of limitations, of which 26 U.S.C. § 6532(c) is only one example, is generally found to be inhospitable to the doctrine of equitable tolling. *See Brockamp*, 519 U.S. at 352 ("Tax law, after all, is not normally characterized by case-specific exceptions reflecting individualized equities."); *Becton Dickinson*, 215 F.3d at 353 (noting the grouping of tax statutes of limitations in Chapter 66, titled "Limitations," of Title 26 of the United States Code and holding that this statutory scheme does not express an intent to allow equitable tolling); *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1462-63 (Fed. Cir. 1998) (noting that "26 U.S.C. § 6532 is part of the same statutory scheme as the statute of limitations [26 U.S.C. § 6511 (2000)] in *Brockamp*" and holding that "there clearly is no equitable exception in" 26 U.S.C. § 6532(a) (2000)).

> noted in *Irwin*, mere excusable neglect is not enough to establish a basis for equitable tolling; there must be a compelling justification for delay, such as "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin*, 498 U.S. at 96, 111 S. Ct. 453.

*Martinez v. United States*, 333 F.3d 1295, 1318 (Fed. Cir. 2003) (*en banc*).

Plaintiff's argument in favor of equitable tolling is that Four Rivers was misled into believing that the tax levies were legal, and thus unassailable, when they were not. *See* Pl.'s Opp. at 5 ("Four Rivers had no way of learning that the [IRS] assessment [underlying the levies] was fraudulent [and] [t]his fraud by the IRS is the reason that the instant case was not brought within the nine month period."). In particular, plaintiff asserts that the IRS did not assess its penalty against Thomas Seidel until December 1996, and that this IRS assessment, fraudulently backdated to October 23, 1996, was illegal because it violated the automatic stay triggered by the Seidels' bankruptcy filing on October 28, 1996. *Id.* at 4-5. Even if plaintiff's version of the facts is correct, however, bankruptcy law does not forbid the IRS from assessing a tax during bankruptcy proceedings.

When a bankruptcy petition is filed, the Bankruptcy Code imposes an automatic stay which prevents debt collection proceedings against the debtor. 11 U.S.C. § 362(a) (2000); *see Hazelquist v. Guchi Moochie Tackle Co.*, 437 F.3d 1178, 1180 (Fed. Cir. 2006) ("Thus, any lawsuit that could have been commenced before the filing of a bankruptcy petition or that asserts a cause of action that arose before the filing of a bankruptcy petition is stayed during bankruptcy proceedings."). There are, however, several exceptions to the general rule found in § 362(a) staying debt collection proceedings, and these are found in 11 U.S.C. § 362(b) (2000). Defendant contends that the IRS tax assessments against Thomas Seidel fall under § 362(b)(9)(D), which states in relevant part that the automatic stay is lifted for

> the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not

> take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

11 U.S.C. § 362(b)(9)(D). Caselaw supports this view. *See, e.g.*, *Bronson v. United States*, 46 F.3d 1573, 1581 (Fed. Cir. 1995) (noting that § 362(b)(9)(D) "will lift the automatic stay as it applies to a tax audit, a demand for tax returns, assessment of an uncontested tax liability, or the making of certain assessments of tax and issuance of a notice and demand for payment for such assessment"); *In re Larsen*, 232 B.R. 482, 483 (Bankr. D. Wyo. 1998) (noting that § 362(b)(9) creates an exception to the automatic stay "for a taxpayer audit, a tax assessment or issuance of a notice of tax deficiency, among other things"); *Shadduck v. Rodolakis*, 221 B.R. 573, 581 & n.15 (D. Mass. 1998) (noting that revisions to § 362(b)(9) effective October 22, 1994 except IRS tax assessments from the automatic stay). Thus, the version of the Bankruptcy Code in effect in 1996 permitted the IRS tax assessment at issue here, even if it occurred, as alleged by plaintiff, in December 1996, after the Seidels' bankruptcy filing.[11]

Plaintiff cites only one post-1994 case for the proposition that an IRS assessment imposed during bankruptcy proceedings is illegal. That case, *40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076 (9th Cir. 2003) (*Lusardi*), is inapposite. The *Lusardi* case cited by plaintiff did not implicate the exceptions provided by § 362(b)(9) and does not rebut defendant's contention that the IRS tax assessment was proper.[12] *See Lusardi*, 329 F.3d at 1080 (noting that the plaintiff in that case, Mr. "Lusardi does not argue that any of the 18 exceptions of section 362(b) applies to his [situation]").

---

[11]/ Plaintiff cites a United States Court of Appeals for the Ninth Circuit decision, *In re Schwartz*, 954 F.2d 569 (9th Cir. 1992), that relied upon a former version of 11 U.S.C. § 362 for its holding that IRS tax assessments violate the automatic stay found in § 362. This citation is not helpful, because it is the revised version of 11 U.S.C. § 362 which pertains here.

[12]/ Plaintiff does not allege that the IRS did anything more than assess the penalty while the automatic stay was in effect. The Seidels were discharged from bankruptcy in February 1997. Pl.'s Opp. Ex. 6 at 4. The levies and the filing of the tax lien at issue in this case did not occur until 2003 or later.

The clear language of the Bankruptcy Code permits the IRS activity which plaintiff asserts was illegal and fraudulently concealed. Even if plaintiff's version of the facts is correct, Four Rivers was not duped into acquiescing to an invalid penalty assessment against Thomas Seidel, because the assessment was valid even if imposed after the Seidels' bankruptcy filing. For this reason, the court finds that even if 26 U.S.C. § 6532(c) could be equitably tolled, plaintiff has not alleged facts which would entitle Four Rivers to an equitable tolling of that statute for the wrongful levy claims brought here. *Accord Compagnoni v. United States*, No. 94-0813-CIV-MARCUS, 1997 WL 416482, at *3 (S.D. Fla. May 13, 1997) (noting first that the *Brockamp* analysis may forbid the equitable tolling of § 6532(c), but in any case refusing to equitably toll the statute for a plaintiff who never came "forward with any persuasive evidence suggesting that equitable tolling principles should be applied to extend the limitations period" under the facts of that case), *aff'd on other grounds*, 173 F.3d 1369 (11th Cir. 1999). Plaintiff's wrongful levy claims must be dismissed as untimely.

## IV. Jurisdiction over Plaintiff's Challenge to Tax Lien-Related Collections by the IRS

Defendant contends that this court does not have jurisdiction over plaintiff's challenge to the collection of funds by the IRS in exchange for its discharge of the tax lien affecting the sale of the Salinas property.[13] Defendant asserts that Congress provided an exclusive remedy to persons similarly situated to plaintiff here. Because Four Rivers did not take advantage of that exclusive remedy, defendant concludes that plaintiff now has no recourse for judicial review of its

---

[13]/ Plaintiff's opposition to defendant's motion to dismiss focuses entirely on the supposed illegality of the December 1996 penalty assessment by the IRS, which, as discussed above, was not illegal, even if the facts alleged by plaintiff are true. In addition, plaintiff only applies its equitable tolling argument to the statute of limitations for wrongful levies, and does not address real property tax liens and the statutory scheme for recovering funds paid to discharge such liens. The court notes that even if plaintiff is arguing for the equitable tolling of an unnamed statute of limitations related to contested discharges of real property tax liens, an argument which might conceivably be implied but is certainly not explicit in plaintiff's opposition brief, that argument fails. The IRS penalty assessment which underlies the tax lien on the Salinas property, even if it had been made in December 1996, as alleged by plaintiff, was proper. Thus, there is no cause for equitable tolling in the scenario alleged by plaintiff that could in any way affect this court's jurisdiction over plaintiff's claim related to the tax lien on the Salinas property.

claim. The court agrees that plaintiff has not established a valid jurisdictional basis for its challenge to the tax lien-related collections by the IRS, as more fully explained below.

The seminal case in this area of law is *United States v. Williams*, 514 U.S. 527 (1995). In *Williams*, the United States Supreme Court held that a third party could sue for a refund under 28 U.S.C. § 1346(a)(1) (2000) if that real property owner had paid to discharge a tax lien which was based on a tax assessed against another person.[14] *See Williams*, 514 U.S. at 536 ("As we have just developed, 28 U.S.C. § 1346(a)(1) clearly allows one from whom taxes are erroneously or illegally collected to sue for a refund of those taxes."). The Court noted that unless a refund suit was authorized under § 1346(a)(1), no other remedy was available to the real property owner. *See id.* ("The Government's strained reading of § 1346(a)(1), we note, would leave people in Williams' position without a remedy."). At that time, the array of legal options available to a third party provided no realistic means to recover the payment made to discharge the tax lien. *Id.* ("Though the Government points to three other remedies, none was realistically open to Williams [or] to others in her situation."). The Court ruled that Congress did not intend to leave the third party without a remedy, *id.* at 529, and held that third parties could bring suits under § 1346(a)(1) to obtain a refund of the payments they had made to discharge an IRS tax lien, *id.* at 536.

Whether the *Williams* interpretation of the jurisdictional scope of § 1346(a)(1) is still good law is an interesting question. The Supreme Court continues to cite the holding of *Williams*. *See EC Term of Years Trust v. United States*, 127 S. Ct. 1763, 1768 (2007) ("Although we decided [in *Williams*] that § 1346(a)(1) authorizes a tax-refund claim by a third party whose property was subjected to an allegedly wrongful tax lien, we so held on the specific understanding that no other remedy . . . was open to the plaintiff in that case."). But the Supreme Court has not had occasion to revisit the *Williams* interpretation of § 1346(a)(1) in light of intervening changes in the tax code which bear on both the availability of other remedies and congressional intent.

---

[14]/ The relevant text of § 1346(a)(1) provides jurisdiction in this court for "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346(a)(1).

In an unpublished opinion, the United States District Court for the Southern District of Florida has described the relevant tax code changes:

> The facts of [this] case fall under the scope of 26 U.S.C. §§ 7426(a)(4) and (b)(5) [(2000)] for refunds from incorrect assessments of substitution of value [related to obtaining the discharge of an IRS tax lien]. These subsections relate back to 26 U.S.C. § 6325(b) [(2000)], which was also passed in 1998 in response to the seminal case of *United States v. Williams*, 514 U.S. 527 (1995). In that case, the Supreme Court held that a third party, in similar circumstances as [plaintiff], who paid an ex-husband's tax under protest could bring a refund suit under 28 U.S.C. § 1346(a)(1) because of a lack of an adequate administrative or statutory remedy. *See Williams*, 514 U.S. at 536. Section 1346(a)(1) permits a judicially awarded refund of tax money erroneously "assessed or collected."
>
> In order to assist persons in [plaintiff's] situation, Congress amended 26 U.S.C. §§ 7426 and 6325. Under the Act, [an owner of property] against which a tax lien has been filed can obtain a certificate of discharge as a matter of right from the IRS by providing a cash deposit or bond sufficient to protect the IRS' lien interest in the property. Although the IRS determines the amount necessary to protect the lien interest, it has no discretion to refuse to issue a properly applied for certificate of discharge. The provision authorizes the refund of all or part of the amount deposited, plus overpayment interest, if the IRS later determines that it does not have a lien interest or has a lesser lien interest than initially determined. The provision also provides an opportunity for expedited judicial review for third parties to challenge the lien, to be filed within 120 days after the issuance of the certificate of discharge.
>
> The procedures set forth in 26 U.S.C. § 6325 basically require a third party to discharge a lien (in order

> to clear title to the subject property), and then administratively challenge the lien afterwards in order to collect a refund. Section § 7426(a)(4) then provides a judicial remedy if the third party is dissatisfied with the result, i.e. the IRS' determination of the lien value. By starting the 120-day time period for filing upon the issuance of the certificate of discharge, 26 U.S.C. § 7426(a)(4) requires the party to challenge, in effect, those actions up to and including the discharge, e.g. assessment and collection.

*Coutant v. United States*, No. 00-14163-CV-MOORE, 2002 WL 471769, at *3 (S.D. Fla. Feb. 26, 2002) (citations to legislative documents omitted). Thus Congress has addressed a primary concern of the *Williams* court, by providing a remedy independent of § 1346(a)(1) for third party owners of property who pay the IRS to discharge a lien on their property. *See Crytser v. United States*, No. CV-06-175-LRS, 2006 WL 3203585, at *5 (E.D. Wash. Nov. 2, 2006) ("Sections 6325(b)(4) and 7426(a)(4) provide the remedy that was unavailable to the third party in *Williams*."). These amendments also arguably reveal the intent of Congress to make this the exclusive remedy for third party property owners. *See* 26 U.S.C. § 7426(a)(4) (stating that "[i]f a certificate of discharge is issued to any person under section 6325(b)(4) with respect to any property, such person may, within 120 days after the day on which such certificate is issued, bring a civil action against the United States in a district court of the United States for a determination of whether the value of the interest of the United States (if any) in such property is less than the value determined by the Secretary. *No other action may be brought by such person for such a determination*.") (emphasis added); *Crytser*, 2006 WL 3203585, at *5 ("Permitting a third party to bring another action, such as a refund suit [under § 1346(a)(1)], would conflict with the 120-day limit Congress imposed on actions brought under section 7426(a)(4).") (citation omitted).

Three courts that have looked at this issue have found that Congress answered the concerns of the *Williams* court by providing, in § 6325(b)(4), an administrative remedy which must be exhausted if third party property owners wish to discharge, and later contest, an IRS lien on their real property. *See Munaco v. United States*, No. 06-14019, 2007 WL 1585668, at *4 (E.D. Mich. June 1,

2007) ("Because Plaintiff, a third-party, did not use the available remedy [under §§ 6325(b)(4) and 7426(a)(4)] before bringing suit, the Court must dismiss his claim for lack of subject matter jurisdiction."); *Crytser*, 2006 WL 3203585, at *8 (dismissing for lack of jurisdiction because the "Plaintiff failed to exhaust administrative remedies under § 6325(b)(4) and bring a timely action under § 7426(a)(4) before initiating this refund suit"); *City of Richmond, Ky. v. United States*, 348 F. Supp. 2d 807, 814 (E.D. Ky. 2004) (noting that the plaintiff in that case "did not use the available remedies [provided by §§ 6325(b)(4) and 7426(a)(4)] before bringing the present refund suit" and dismissing the case for lack of jurisdiction because of the plaintiff's failure to exhaust administrative remedies). These decisions, taken together, question the continuing viability of the *Williams* holding permitting suits to be brought under § 1346(a)(1) by third party property owners contesting an IRS tax lien. The IRS has issued a revenue ruling stating that because of the 1998 changes to the tax code, *Williams* no longer permits third party real property owners to file refund suits under § 1346(a)(1) to attempt to recover what they paid to discharge an IRS tax lien. Rev. Rul. 2005-50, 2005-2 C.B. 124. This court has found only one decision indicating that § 1346(a)(1) perhaps offers, along with § 7426(a)(4), a means of contesting IRS tax lien collections from third party property owners, but that case involved a lien discharge which predated the 1998 tax code changes, a situation not pertinent here. *See Coutant*, 2002 WL 471769, at *4.

Thus, the weight of authority suggests, admittedly in opinions that are not binding on this court, that § 1346(a)(1) no longer provides jurisdiction in this court for third party real property owners contesting an IRS tax lien and related collections. A cursory review of the legislative history of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3106, 112 Stat. 685, 732-34, confirms that Congress intended to respond to *Williams* and to create a judicial remedy that was different than the recourse provided by § 1346(a)(1):

> [The new provision] cur[es] the defect in [the existing] remedy that the Supreme Court found in Williams. . . .
>
> The provision also establishes a judicial cause of action for third parties challenging a lien that is similar to the wrongful levy remedy in section 7426. The period within which such an action must be commenced would

> be 120 days after the date the certificate of discharge is issued to ensure an early resolution of the parties' interests. Upon conclusion of the litigation, the IRS would be authorized to apply the deposit or bond to the assessed liability and to refund to the third party any amount in excess of the liability, plus interest, or to release the bond.

S. Rep. 105-174, at 54-55 (1998). The court concludes that § 1346(a)(1) cannot provide jurisdiction in this court for refund suits brought by third party real property owners who wish to challenge tax lien-related collections by the IRS and who have not pursued the remedy provided to them by §§ 6325(b)(4) and 7426(a)(4).[15]

If a third party is interested in later pursuing a judicial remedy to recover funds expended to obtain the discharge of an IRS tax lien on real property, the first step is to negotiate with the IRS so that the lien is discharged pursuant to § 6325(b)(4). Unless the lien is discharged pursuant to § 6325(b)(4), the judicial review provided by § 7426(a)(4) is unavailable. *See* 26 U.S.C. § 7426(a)(4) ("Substitution of value.–*If a certificate of discharge is issued to any person under section 6325(b)(4)* with respect to any property, such person may, within 120 days after the day on which such certificate is issued, bring a civil action against the United States in a district court of the United States for a determination of whether the value of the interest of the United States (if any) in such property is less than the value determined by the Secretary. *No other action may be brought by such person for such a determination*.") (emphasis added). If a third party obtains the discharge of a tax lien pursuant to § 6325(b)(2)(A), the tax code provides for no judicial review of the collection by the IRS in exchange for the certificate of discharge. *Crytser*, 2006 WL 3203585, at *6 (citations omitted); Rev. Rul. 2005-50, 2005-2 C.B. 124; *see also Wilson v. United States*, No. 1:03-CV-190, 2004 WL 790220, at *2 (E.D. Tenn. Feb. 24, 2004) (finding no jurisdictional basis to review a collection related to a tax lien discharge obtained pursuant to § 6325(b)(2)(A)).

---

[15]/ The court notes that plaintiff Four Rivers has not alleged jurisdiction for its suit under 28 U.S.C. § 1346(a)(1).

In this case, during negotiations to discharge the lien on the Salinas property, the IRS sent to plaintiff's representative IRS Publication 783 which references applicable sections of the tax code, including both §§ 6325(b)(2)(A) and 6325(b)(4). *See* Def.'s Mot. Ex. 11. As negotiations progressed, the IRS offered a Commitment Letter stating the conditions for a certificate of discharge of the lien on the Salinas property, and stating that the discharge would be pursuant to § 6325(b)(2)(A), not mentioning § 6325(b)(4). *Id.* Ex. 14. Plaintiff accepted the IRS proffer and met the conditions set by the IRS, and in return obtained a certificate of discharge marked as being issued pursuant to § 6325(b)(2)(A). *Id.* Ex. 19 at 3. Thus, plaintiff missed its opportunity to obtain a discharge under § 6325(b)(4), and therefore neglected to preserve a right to judicial review of the IRS collection related to the tax lien on the Salinas property.[16]

---

[16]/ Although the IRS characterized plaintiff's application for a discharge of the lien as an "application . . . for a Certificate of Discharge under the provisions of Section 6325(b)(2)(A) of the Internal Revenue Code," Def.'s Mot. Ex. 14 at 3, the application had in fact been captioned "Request for a Discharge of Property from Federal Tax Lien Under section 6325b," *id.* Ex. 12 at 3. Although it is of no material significance in the instant case, the court notes that the version of IRS Publication 783 sent to plaintiff contained no warning that a discharge issued under § 6325(b)(2)(A) offered no right to judicial review, or that a discharge issued under § 6325(b)(4) did offer such a right. *See id.* Ex. 11. Less than a year later, IRS Publication 783 was revised to include such a warning:

> Because making an application and deposit (or providing a bond) under section 6325(b)(4) provides a judicial remedy not available for an application and payment made under section 6325(b)(2), owners (other than the taxpayer) wishing to apply for a certificate of discharge under this provision must waive, in writing, their rights to make a deposit allowed under Section 6325(b)(4) and to file suit for return of the deposit or accepted bond allowed under section 7426(a)(4). Unless the waiver has been provided in writing, the Service will treat an application made by an owner of the property (other than the taxpayer) as an application made under section 6325(b)(4), with all funds treated as a deposit.
>
> Other than the judicial review available under the deposit/bond procedures under sections 6325(b)(4) and 7426(a)(4), there is no remedy available to the third party for the return of payment (or portion thereof). An administrative request for refund and a refund suit in district court is not available.

(continued...)

Even if plaintiff had insisted that the certificate of discharge be issued under § 6325(b)(4) and had met the conditions for obtaining such a certificate, the judicial review provided thereafter by § 7426(a)(4) is offered only in United States district courts, and only if the filing of the suit occurs within 120 days of the issuance of that certificate. 26 U.S.C. § 7426(a)(4). Plaintiff's suit here would still be in the wrong court, and untimely, and jurisdiction still would not lie. For these reasons, plaintiff's claim challenging the tax lien-related collections by the IRS must be dismissed for lack of jurisdiction.

## V. Plaintiff's Request for a Temporary Restraining Order or Preliminary Injunction

Plaintiff requests injunctive relief against collection activities by the IRS such as "levying the bank accounts of Thomas E. Seidel and his wife Vicki R. Seidel" which plaintiff alleges were begun in recent months and continue. Pl.'s TRO Mot. at 2. For plaintiff to prevail on its motion for injunctive relief, there must be a likelihood that plaintiff will succeed on the merits of its suit. *See USA-ITA*, 413 F.3d at 1346. As previously discussed, the court must dismiss plaintiff's claims for lack of jurisdiction and cannot reach the merits of those claims. Thus, plaintiff cannot succeed on the merits, and in turn, cannot receive the injunctive relief requested. *See id.* at 1350 (reversing the lower court's grant of a preliminary injunction because the defendant's "arguments as to jurisdiction demonstrate that the [plaintiff was] not likely to succeed" on the merits). In light of the foregoing, plaintiff's request for a temporary restraining order or preliminary injunction is denied.

## CONCLUSION

Accordingly, it is hereby **ORDERED** that

(1) Defendant's Motion to Dismiss, filed May 3, 2007, is **GRANTED**;

(2) Plaintiff's Request for Temporary Restraining Order and Injunction,

[16](...continued)
IRS Publication 783 (revised August 2005), http://www.irs.gov/app/scripts/retriever.jsp (last visited July 24, 2007). This revision should help third party real property owners in the future to better understand their rights to judicial review in situations analogous to the facts alleged here.

filed June 6, 2007 is **DENIED**;

(3) Defendant's Motion for Leave to File Notice of Supplemental Authority, filed July 26, 2007, is **DENIED** as moot;

(4) The Clerk's Office is directed to **ENTER** judgment for defendant, **DISMISSING** plaintiff's complaint, without prejudice; and

(5) Each party shall bear its own costs.

/s/Lynn J. Bush
LYNN J. BUSH
Judge